**Philip AVELLO, Plaintiff,**

v.

**Marva Livingston HAMMONS, Administrator/Commissioner, New York City Human Resources Administration, Michael Infranco, Deputy Commissioner of New York City Human Resources Administration, Marvin Bettis, Special Assistant, New York City Human Resources Administration, The New York City Human Resources Administration and The City of New York, Defendants.**

**No. 96 Civil 0927 (DAB).**

United States District Court,
S.D. New York.

April 29, 1997.

10. In light of the Court's decision, it will not address Partner Defendants' motion to stay.

Paul Crotty, Corporation Counsel for the City of New York, New York City, Margaret Shalley, New York City, for Defendants.

Philip Avello, New York City, pro se.

### MEMORANDUM AND ORDER

BATTS, District Judge.

Plaintiff filed an action alleging violations of his constitutional Due Process, Equal Protection, and privacy rights. Plaintiff also alleges a pendant state claim for defamation. Defendants move to dismiss the Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. For the reasons stated below, Defendants' Motion to Dismiss is granted.

### I. BACKGROUND

On August 20, 1993, Plaintiff entered into a stipulation with his ex-wife, Elba Rodriquez Avello, in which he agreed to pay child support of $125 per week, directly to his ex-wife, for the support of their child, Genevieve Eileen Avello. (Compl.Ex. 3.) On the same day, the New York State Family Court, New York County, entered an Order based upon the stipulation, directing Plaintiff to make child support payments directly to his ex-wife. (Compl.Exs.1, 2.) The Family Court's Order also directed the New York City Human Resources Administration's Child Support Collection Unit ("SCU") to "halt all collection efforts immediately." (Compl.Ex. 1.)

On December 31, 1993, more than four months after the Family Court directed SCU to halt all collection efforts, the Human Resource Administration's Office of Child Support Enforcement ("OCSE"), issued an Income Execution for Support Enforcement pursuant to the New York Civil Practice Law and Rules § 5421 (Compl.Ex. 4.) ("Income Execution") Defendant maintains that copies of the Income Execution were sent to Plaintiff and to Plaintiff's employer (Compl.Ex. 11.), but Plaintiff alleges that he never received a copy of the execution until sometime in March 1994. (Compl.¶ 9, Ex. 9) As a result of the Income Execution, on or about March 8, 1994, Plaintiff's salary was garnished for alleged failure to make child support payments. (Compl.¶ 8, Exs.7, 10.) On March 10, 1994, Plaintiff's attorney notified OCSE that, pursuant to the Family Court's Order dated August 20, 1993, child support payments were to be made directly to Plaintiff's ex-wife and not to OCSE. (Compl.Ex. 6.)

On April 11, 1994, Plaintiff wrote a letter to Michael Infranco, Deputy Commissioner of OSCE, complaining that his salary had been wrongly garnished in the amount of $375.00 and requesting that the money be returned. (Compl.Ex. 9.) By letter dated May 10, 1994, Deputy Commissioner Infranco notified Plaintiff that on April 20, 1994, a refund check for $375.00 was sent to Plaintiff. (Compl.Ex. 11.) Deputy Commissioner Infranco also stated in his letter that OSCE never received a copy of the Family Court's August 20, 1993 Order until March 10, 1994, when Plaintiff's attorney provided OSCE with a copy, and that a copy of the Income

Execution was mailed to Plaintiff's home on December 31, 1993. (Compl.Ex. 11.)

On or about June 10, 1994, approximately one month after receiving Deputy Commissioner Infranco's letter, Plaintiff received notices from OSCE which indicated that Plaintiff still had an active child support account with OSCE. (Compl.Ex. 12, 13.) On August 1, 1995, Plaintiff wrote New York City Mayor Rudolph Giuliani, complaining that OSCE was harassing him and was refusing to remove his name from their child support collection computer database. (Compl.¶ 16, Ex. 16.) By letter dated August 17, 1995, Marvin Bettis, Special Assistant, OCSE ("Bettis"), responded on behalf of Mayor Giuliani and informed Plaintiff that' his OSCE account had been closed since April 1994, when all enforcement activity effectively ceased. (Compl.Ex. 17.) Bettis also stated in his letter that the OSCE notices were sent to Plaintiff in error, and that Plaintiff's account was scheduled to be purged from OSCE's system in the immediate future. (Compl.Ex. 17.)

On or about October 13, 1995, Plaintiff was notified by the General Electric Capital Corporation ("General Electric") that his request to increase his credit line on his WIZ account was denied because of "Insufficient satisfactory credit obligations [and] Previous delinquency." (Compl.Ex. 20.) General Electric indicated that their denial was based on information they received from Equifax Credit Service. (Compl.Ex. 20.) After receiving the denial letter from General Electric, Plaintiff obtained a copy of his credit report from Equifax. (Compl.Ex. 21.) The Equifax credit report indicated that Plaintiff was in arrears for over ninety (90) days for child support payments. (Compl.Ex. 21.)

Plaintiff now seeks compensatory and punitive damages for alleged violations of his constitutional Due Process, Equal Protection, and privacy rights. Defendants move to dismiss for failure to state a claim.

**1.** 42 U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or

## II. DISCUSSION

"On a motion to dismiss under 12(b)(6), the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of N.Y.,* 53 F.3d 465, 469 (2d Cir.1995) (citations omitted). The District Court should grant such a motion only if after viewing Plaintiff's allegations in this favorable light, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Walker v. City of N.Y.,* 974 F.2d 293, 298 (2d Cir.1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993) (quoting *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119 (2d Cir.1991)). In deciding a 12(b)(6) motion, the Court must not "assay the weight of the evidence which might be offered in support thereof," but rather must limit its consideration to the facts that appear on the face of the Complaint. *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984).

### A. Failure To State a Claim under 42 U.S.C. § 1983

#### 1. *Plaintiff's Due Process Claim*

Plaintiff alleges that Defendants, in garnishing his wages without prior notice, recording information on his paystubs, and maintaining his name in their child support collection computer database, damaged his reputation and violated his liberty interests under the Due Process Clause of the Fourteenth Amendment. (Compl.¶¶ 8–10, 12, 14–15, 17.) Plaintiff claims that because he was denied Due Process and the Defendants were acting under color of state law, he has sufficiently stated a claim under 42 U.S.C. § 1983.[1]

■ Examination of a Fourteenth Amendment Due Process claim under 42 U.S.C. § 1983 involves two steps. First, the Court

> other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

should determine whether there exists a liberty or property interest which has been interfered with by the state. *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994) (citing *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989)). Second, after finding that the Plaintiff has a protected liberty or property interest that has been interfered with, the Court should examine whether the procedures used in conjunction with any deprivation of those interests were constitutionally sufficient. *Valmonte,* 18 F.3d at 998. In performing the initial step of its examination of Plaintiff's Due Process claim, the Court finds, after reading the Complaint in a light most favorable to the Plaintiff, that Plaintiff has failed to allege any liberty interest that warrants constitutional protection.

■ It is well established that damage to one's reputation is not "by itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976); *see also Valmonte,* 18 F.3d at 999; *Neu v. Corcoran,* 869 F.2d 662, 667 (2d Cir.), *cert. denied,* 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989); *Baden v. Koch,* 799 F.2d 825, 829 (2d Cir.1986). Rather, to plead sufficiently a claim under the Due Process Clause, a Plaintiff must allege defamation coupled with the termination of government employment or the deprivation of some other legal right or status. *Paul v. Davis,* 424 U.S. at 701, 96 S.Ct. at 1160; *Neu,* 869 F.2d at 667. Courts have interpreted this holding to mean that "stigma plus" is required to establish a constitutional deprivation where Plaintiff alleges damage to his reputation. *Valmonte,* 18 F.3d at 999; *Neu,* 869 F.2d at 667.

■ Plaintiff argues that he has met both prongs of the "stigma plus" test, in that he adequately pleads harm to his reputation and deprivation of another legal right. (Pl.'s Mem. Law at 4–5.) Plaintiff alleges that he has been stigmatized because Defendants (1) garnished his salary; (2) refused to remove his name from their child support collection computer database; and (3) disseminated erroneous credit information to third parties. (Compl.¶¶ 10, 12, 14, 15.) Plaintiff further alleges that the "plus" prong, the deprivation of a legal right in addition to the defamation, has also been met because Plaintiff has suffered a loss of credit. (Compl.¶ 15.)

■ The Court finds that Plaintiff has failed to make an adequate showing to satisfy the "plus" prong of the "stigma plus" test. The loss of credit has never been recognized as a liberty or property interest deserving constitutional protection. While it is difficult to define precisely those liberty and property interests that are protected by the Due Process Clause, the Supreme Court has stated that "interests attain [ ] constitutional status by virtue of the fact that they have been initially recognized and protected by state law." *Paul v. Davis,* 424 U.S. at 710, 96 S.Ct. at 1165. Once an interest has been recognized and protected by state law, however, the state cannot remove or significantly alter that protected status without first affording an individual Due Process. *Id.*

For example, in *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the state, by issuing drivers' licenses, recognized in its citizens the right to operate a vehicle on public roads. The Court held that before the state could revoke a person's license, the party had to be afforded Due Process. *Bell,* 402 U.S. at 539, 91 S.Ct. at 1589. Likewise, in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the state afforded parolees the right to remain at liberty as long as they complied with the conditions of their parole. Before the state could revoke an individual's parole and return him or her to prison, the Court held that the parolee had to be afforded procedural Due Process. *Morrissey,* 408 U.S. at 482, 92 S.Ct. at 2601. And in *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2702, 33 L.Ed.2d 548 (1972), the Court recognized that a state government employee may have a protected liberty or property interest in his or her government job. In cases where the termination of a government employee occurs in such a manner as to impose a stigma or other disability on the employee that effectively prevents the employee from taking advantage of other employment opportunities, the Court held that the employee must be afforded procedural Due Process. *Id.*

Here, Plaintiff is unable to show that Defendants, as state actors, altered or extinguished a right or status that was previously recognized under state law. New York law does not extend to Plaintiff any legal guarantee to obtain or maintain credit. Any harm or injury to Plaintiff's credit, even if inflicted by an officer of the state, does not result in a deprivation of a liberty or property interest recognized by state or Federal law, nor has it altered or extinguished a status that was previously recognized under New York's laws. *See Paul v. Davis,* 424 U.S. at 712, 96 S.Ct. at 1166. At best, Plaintiff alleges one of many possible "deleterious effects which flow directly from a sullied reputation," but which is insufficient to support a Due Process claim. *Valmonte,* 18 F.3d at 1001.

Plaintiff relies on *Valmonte v. Bane* to support his contention that he has met both prongs of the "stigma plus" test and, thus, has sufficiently set forth a Due Process claim. (Pl.'s Mem. Law at 4; Pl.'s Mem. Law in Further Support of Plaintiff's Opposition at 2–3.) Plaintiff's reliance on *Valmonte* is misplaced, as that case is readily distinguishable. In *Valmonte,* Plaintiff's name was placed on a statewide register for suspected child abusers ("register") after Plaintiff admitted slapping her eleven year-old daughter in the face after the child had been caught stealing. *Valmonte,* 18 F.3d at 997. After Plaintiff unsuccessfully attempted to have her name expunged from the register via a state administrative proceeding, Plaintiff filed an action in federal court pursuant to 42 U.S.C. § 1983, alleging that the state stigmatized her as a child abuser while simultaneously depriving her of her ability to seek employment. *Id.* at 998. Plaintiff, a former paraprofessional in the school system, argued that she was unable to obtain employment in the child care field as a result of being listed on the state's child abuse register. *Id.* at 998–99. The District Court dismissed Valmonte's claims, finding that no liberty interest was implicated. *Id.* at 998.

On appeal, the Second Circuit reversed and held that the "dissemination of information from the Central Register to potential child care employers, coupled with the defamatory nature of inclusion on the list [ ]

implicate[s] a liberty interest." *Id.* at 994. In reaching its decision, the Second Circuit noted that the issues in *Valmonte* were "unique," "not previously considered in the case law," and were based on a "statutory scheme [that] is unique." *Id.* at 995.

The principal statute at issue in *Valmonte* was New York Social Services Law § 424–a (McKinney 1992 & Supp.1997) ("SSL"), which requires, *inter alia,* "certain employers in the child care field to make inquiries to the Central Register to determine whether potential employees are among those listed." *Id.* The purpose of the statute is to ensure that individuals listed on the register do not become licensed or employed in positions that allow substantial contact with children, unless the employer is first made aware of the applicant's status. *Id.* When a potential employer discovers that an applicant is listed on the register, the employer can only hire the individual if the employer "maintain[s] a written record ... of the specific reasons why such person was determined to be appropriate." SSL § 424–a(2)(a). Should a potential employer decide not to hire an individual listed on the register, the employer must provide the applicant with a written statement setting forth its reasons for not hiring the individual. SSL § 424–a(2)(b)(i)

According to the Second Circuit, the burden placed on employers by SSL § 424–a(2)(a), (2)(b)(i), requiring potential employers to explain their reasons in writing for hiring or not hiring Valmonte, was tantamount to a statutory impediment established by the state that specifically deprived Plaintiff of her opportunity to seek employment. *Valmonte,* 18 F.3d at 1001. This statutory impediment, the court noted, resulted in a change in Plaintiff's status significant enough to satisfy the "plus" prong of the "stigma plus" test. *Id.* at 1002. The Court stated that the *defamatory* nature of being listed on the state's register, coupled with the statutory impediment to employment, were sufficient to establish a cause of action for deprivation of a liberty interest. *Id.* The Court reasoned that there is little difference between losing one's established position in government employment because of defamation, which implicates a liberty interest under

certain circumstances, and losing one's prospective position in government or a government regulated field because of defamation. *Id.*

■ Because the "unique" statutory scheme at issue in *Valmonte* is not present here, Plaintiff's claim is readily distinguishable. Here, Plaintiff argues that Defendants, by labeling him a "deadbeat dad," have adversely affected his chances of securing future employment. (Pl.'s Mem. Law in Further Support of Plaintiff's Opposition at 2–3.) Such an claim, even if true, is an allegation of defamation and will not support a Due Process claim. As the Court noted in *Valmonte*, it is only when defamation is *coupled* with a statutory impediment to employment that Plaintiff has sufficiently stated a cause of action for deprivation of a liberty interest. *Valmonte*, 18 F.3d at 1002 (emphasis added). In the absence of a showing by Plaintiff of a statutory impediment that impermissibly burdens prospective employers sufficiently to deny him employment, Plaintiff's claim fails to rise to a constitutional level. Plaintiff's damages, if any, may be recoverable under state tort law in a defamation action, but they are not recoverable in a federal civil rights action. *Valmonte* 18 F.3d at 1001 (citing *Siegert v. Gilley*, 500 U.S. 226, 234, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991)); *see also Paul v. Davis*, 424 U.S. at 711–12, 96 S.Ct. at 1165–66. Accordingly, Plaintiff's Due Process claim alleging a violation of liberty interests is dismissed for failure to state a claim.

### 2. The Monell Claim

■ Plaintiff sues the City of New York, the Human Resources Administration, and Defendants Hammons, Infranco, and Bettis in their official capacities. Where a Complaint alleges an action against a City official in his or her official capacity, the action is to be construed as one against the City itself. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991); *Monell v. Dep't of Social Services*, 436 U.S. 658, 691 n. 55, 98 S.Ct. 2018, 2036 n. 55, 56 L.Ed.2d 611 (1978); *Conner v. Abate*, 1997 WL 96582, at *2 (S.D.N.Y. Mar.5, 1997). Because Plaintiff has sued the individual Defendants in their

official capacities and the Complaint refers to the actions of the Human Resources Administration and not the individual Defendants (Compl.¶¶ 8, 13, 14), the Court will construe Plaintiff's claims as being solely against New York City and not the individual Defendants. *Hafer v. Melo*, 502 U.S. at 25, 112 S.Ct. at 361; *Conner v. Abate*, 1997 WL 96582, at *2.

In *Monell*, the Supreme Court held that a municipality cannot be held liable, on a theory of respondeat superior, for the isolated unconstitutional acts of its employees. *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. Rather, to establish a municipality's liability based on the actions of its employees, a Plaintiff must demonstrate that (1) he suffered a constitutional injury and (2) that the injury resulted from a policy or custom of the municipality. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–38; *Walker v. City of New York*, 974 F.2d 293, 296 (2d Cir.1992). Plaintiff has failed to make such a showing.

■ As discussed at length above, Plaintiff has failed to allege sufficiently that he has suffered a constitutional injury, as Plaintiff's claim for defamation does not rise to a constitutional level. Plaintiff also fails to allege that Defendants' actions stemmed from the implementation or enforcement of a New York City policy or custom. While the Complaint alleges that the Human Resources Administration unlawfully garnished Plaintiff's wages, refused to removed Plaintiff's name from their database, and continually harassed Plaintiff (Compl.¶¶ 8, 14, 16), such isolated acts are not sufficient to support an inference of a municipal policy. *See, e.g., White–Ruiz v. City of New York*, 1996 WL 603983 *7 (S.D.N.Y. Oct.22, 1996); *Fahle v. Braslow*, 913 F.Supp. 145, 150–51 (E.D.N.Y. 1996), *aff'd*, 111 F.3d 123 (2d Cir.1997). Because Plaintiff has failed to establish that he suffered a constitutional injury as the result of a policy or custom of the Defendant New York City, Plaintiff's *Monell* claim is dismissed for failure to state a claim.

### B. Right to Privacy Claim

■ Plaintiff also alleges a violation of his "privacy rights" under the United States Constitution, because the Human Resources Administration has continued to secure infor-

mation about his employment. (Compl.¶ 13.) While the "right to privacy" is not found in any specific guarantee of the constitution, the Supreme Court has recognized that penumbras, or zones of privacy, may be created by more specific constitutional guarantees and may impose limits upon the government's power. *Paul v. Davis,* 424 U.S. at 712–13, 96 S.Ct. at 1166 (citing *Roe v. Wade,* 410 U.S. 113, 152–53, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973)). In *Roe,* the court held that the rights that come within the constitution's guarantee of privacy are limited to those rights which are "fundamental" or "implicit in the concept of ordered liberty." *Paul v. Davis,* 424 U.S. at 713, 96 S.Ct. at 1166. Activities that have been found to fall within this definition and are thus deserving of constitutional protection are marriage, procreation, contraception, child rearing, family relationships, and education. *Id.*

■ Plaintiff's claim alleging defamation and damage to his credit does not implicate any right that is "fundamental" or "implicit in the concept of ordered liberty" and, thus, does not fall within the constitution's narrow guarantee of privacy. As the court stated in *Paul v. Davis,* the dissemination of information that is harmful to one's reputation does not fall within the " sphere contended to be 'private' " and is not deserving of constitutional protection. *Id.* Plaintiff's right to privacy claim is dismissed for failure to state a claim.

**C. Plaintiff's Claim Pursuant to 42 U.S.C. § 1981**

■ Plaintiff further alleges that Defendants have violated 42 U.S.C. § 1981, which provides:

all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licens-

es, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

Section 1981 contemplates protection for those discriminated against on the basis of ancestry or ethnic characteristics, *United States v. Somerstein,* 959 F.Supp. 592, 594–95 (E.D.N.Y.1997), and a party bringing a claim under this section must plead facts establishing that Defendants' actions were racially motivated and purposefully discriminatory. *General Bldg. Contractors Assoc. v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982).

■ To survive a motion to dismiss, a Plaintiff must specifically allege the events claimed to constitute intentional discrimination, as well as the circumstances that allow a reasonable inference of racially discriminatory intent. *Yusuf v. Vassar College,* 35 F.3d 709, 713 (2d Cir.1994). "[A] complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of [42 U.S.C. § 1981], fails to state a claim under Rule 12(b)(6)." *Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir. 1978).

Plaintiff has failed to allege specifically the events that he claims constitute intentional discrimination. In fact, the Complaint is devoid of any reference to race or discrimination. Under the facts pleaded in the Complaint, the Court is not even aware of the race or ethnicity of the Plaintiff or the individual Defendants. The Complaint also fails to allege any facts upon which the Court could draw a reasonable inference of racially discriminatory intent by the Defendants. Accordingly, Plaintiff's claim under 42 U.S.C. § 1981 is dismissed.

**D. Equal Protection Claim**

■ "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws', which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249,

3254, 87 L.Ed.2d 313 (1985). The central purpose of the Equal Protection Clause is to prevent states from purposefully discriminating between individuals based on race or class-based discriminatory animus. *Shaw v. Reno*, 509 U.S. 630, 642, 113 S.Ct. 2816, 2824, 125 L.Ed.2d 511 (1993); *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir.1996). To make out a claim under the Equal Protection Clause, a Plaintiff must show that a party acting under color of state law was motivated by an invidious discriminatory purpose. *Maldonado v. Pharo*, 940 F.Supp. 51, 56 (S.D.N.Y.1996).

Plaintiff's Complaint is devoid of any reference to discrimination based on race or class-based animus. Accordingly, Plaintiff's Equal Protection claim is dismissed.

### E. Pendent State Claim

■ Plaintiff also alleges a violation of his state Due Process rights. (Compl.¶ 9.) Where "the district court has dismissed all claims over which it has original jurisdiction," the court may decline to exercise supplemental jurisdiction over the remaining state claims. 28 U.S.C. § 1367(c)(3). It is well established that when federal claims are dismissed before trial, the state claims should be dismissed as well. *Castellano v. Bd. of Trustees of the Police Officers' Variable Supplements Fund*, 937 F.2d 752, 758 (2d Cir.), cert. denied, 502 U.S. 941, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)); *Modeste v. Local 1199, Drug, Hospital and Health Care Employees Union*, 850 F.Supp. 1156, 1168 (S.D.N.Y.1994), aff'd, 38 F.3d 626 (2d Cir.1994).

Because all of Plaintiff's federal claims have been dismissed, the factors of judicial economy, convenience, fairness, and comity weigh heavily in favor or remanding Plaintiff's pendent state claim to state court. *Castellano*, 937 F.2d at 758. Therefore, the Court will not exercise supplemental jurisdiction over Plaintiff's state claim and that claim is dismissed.

### III. CONCLUSION

Defendants' Motion to Dismiss Plaintiff's Due Process, Equal Protection and privacy claims is hereby GRANTED. Defendants' Motion to Dismiss Plaintiff's pendent state law claim is hereby GRANTED. The complaint is dismissed in its entirety.

SO ORDERED.