**Ann C. BARCHER, Plaintiff,**

v.

**NEW YORK UNIVERSITY SCHOOL OF LAW, John Sexton, as Dean and Individually, Oscar Chase, as Vice Dean and Individually, Norman Dorsen, as Faculty Member and Individually, Defendants.**

**No. 96Civ.0231(PKL)(SEG).**

United States District Court,
S.D. New York.

Jan. 29, 1998.

Ann C. Barcher, Brooklyn, NY, pro se.

Ada Meloy, S. Andrew Schaffer, New York City, for Defendants.

## MEMORANDUM ORDER

LEISURE, District Judge.

Plaintiff *pro se,* Ann C. Barcher, brings this action against defendants New York University School of Law ("NYU"), John Sexton, as Dean and Individually, Oscar Chase, as Vice Dean and Individually, and Norman Dorsen, as Faculty Member and Individually, under Title 42 United States Code ("U.S.C.") §§ 2000e *et seq.* ("Title VII") as well as under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. §§ 1981, 1983, and 1985(3). Plaintiff alleges that defendants violated Title VII by discriminating against her on the basis of gender and retaliating against her for complaining about the discrimination. Defendants move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, untimely service under Fed.R.Civ.P. 4(m), and abuse of in *forma pauperis* status under 28 U.S.C. § 1915(e). Defendants also seek to strike allegedly immaterial, impertinent, and scandalous matter in the complaint under Fed.R.Civ.P. 12(f), to amend the caption so as to strike certain named individuals, and to seal the file.

This Court referred the action to the Honorable Sharon E. Grubin, United States Magistrate Judge, for preparation of a report and recommendation. On August 26, 1997, Judge Grubin issued a Report and Recommendation (the "Report") that this Court grant defendants' motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6). According to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b), 6(a) and 6(e), the parties have ten (10) days to file written objections to a report and recommendation after being served with a copy. This Court has received and considered objections from both plaintiff and defendants, reviewed the Report, and made a *de novo* determination, as required by 28 U.S.C. § 636(b)(1). The Court has found the Report is legally correct and proper as to the conclusions drawn therein regarding defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), and such motion should be granted. This Court finds plaintiff's arguments to be entirely without merit, and therefore agrees with Magistrate Judge Grubin's Recommen-

dation to deny plaintiff's request for appointment of counsel. *See United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("[Section 636(b)(1) ] permit[s] whatever reliance a district judge, in the exercise of sound judicial discretion, [chooses] to place on a magistrate's proposed findings and recommendations.").

In their objections to the Report, defendants state that Judge Grubin failed to address adequately defendants' alternate grounds for dismissal: the motions to dismiss for untimely service by plaintiff and for plaintiff's alleged abuse of in *forma pauperis* status. Defendants additionally request that this Court strike allegedly scandalous and immaterial matter from the complaint and seal the file. Judge Grubin denied the foregoing requests, and this Court is in agreement with her for the following reasons.

## DISCUSSION

### I. *The Motion to Dismiss for Untimely Service*

■ Regarding the issue of untimely service in violation of Fed.R.Civ.P. 4(m), defendants claim that plaintiff failed to comply with such procedure when she personally served the defendants 54 days after the 120–day period for proper service. Although plaintiff is an attorney, she never has filed an action in federal court, and claims to have relied upon the U.S. Marshal's Office to serve process in this action. For whatever reasons, plaintiff brought the summons and complaint to the Marshal's Office on May 9, 1996—only days before the close of the 120–day period—and the Marshal served process by mail on May 13, 1996. None of the four defendants returned their acknowledgment forms and the Marshal did not serve process personally until on or about July 8, 1996— approximately 54 days past the 120–day service period. When the Marshal mailed the process on May 13, defendants presumably received actual notice of the lawsuit on or around the termination date of the 120–day period. The United States Court of Appeals for the Second Circuit has held that mail service under Fed.R.Civ.P. 4(d)(2)(c) is effective when the recipient receives the summons and complaint and has such actual notice, so long as the serving party includes all docu-

ments necessary for proper service. *See Morse v. Elmira Country Club,* 752 F.2d 35, 39 (2d Cir.1984). In the instant case, actual notice presumably would have reached defendants on May 16, 1996. The Court reaches this date by applying the standard three-day period for mail delivery. Since the Marshal mailed process on May 13, 1996, delivery is assumed on May 16. *See, e.g., Sherlock v. Montefiore Medical Center,* 84 F.3d 522, 525–526 (2d Cir.1996). Even though the arrival date may have, therefore, slightly exceeded the 120–day period for service, the overlap is not so gross as to justify dismissal. Moreover, a recent United States Supreme Court case notes the somewhat discretionary nature of Fed.R.Civ.P. 4, stating that even if there is no good cause for delayed service, the court may allow additional time. *See Henderson v. U.S.,* 517 U.S. 654, 659, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996). Examining the Rule in its historical context, the Supreme Court found the 120–day period "operates not as an outer limit subject to reduction, but as an irreducible allowance." *Id.* Accordingly, this Court chooses not to dismiss plaintiff's complaint on such ground.

### II. *The Motion to Dismiss for Abuse of In Forma Pauperis Status*

Defendants assert that plaintiff has abused *in forma pauperis* status by filing a frivolous or malicious lawsuit. Pursuant to 28 U.S.C. §§ 1915(a) and (d), the district court may, in its discretion, dismiss an *in forma pauperis* action if the court determines that the plaintiff instituted the suit to harass the defendant or if the action has no rational basis in law or fact. In the instant case, this Court is unable to find that plaintiff brought her action to harass defendants or that she lacked reason to believe that she had a valid Title VII claim. While plaintiff never reported her allegations of harassment, it is not this Court's duty to determine whether or not the alleged acts occurred, or if she had a rational basis for thinking that defendants discriminated against her.

### III. *The Request to Strike Allegedly Scandalous and Immaterial Matter in the Complaint*

Pursuant to Fed.R.Civ.P. 12(f), defendants seek to strike immaterial and scandalous ma-

terial in the complaint and to amend the caption by removing the names of the individual defendants. The Court will address this matter, since the request remains at issue regardless of the dismissal of the suit.

■ While the Court recognizes that plaintiff's sexual harassment claims arise from unproven and unreported events that allegedly occurred over twenty years ago, the Second Circuit has stated clearly that district courts should be wary when deciding whether to grant a Rule 12(f) motion on the ground that the matter is impertinent and immaterial. *See Lipsky v. Com. United Corp.,* 551 F.2d 887, 893 (2d Cir.1976). Accordingly, courts must deny such a motion, "unless it can be shown that no evidence in support of the allegation would be admissible." *Id.* at 893; *see also Gleason v. Chain Service Restaurant,* 300 F.Supp. 1241 (S.D.N.Y.1969), *aff'd,* 422 F.2d 342 (2d Cir.1970). In the instant matter, that is simply not the case, for plaintiff certainly could testify as to the alleged harassment. Therefore, the exception enabling the striking of such material is not applicable.

**IV. *The Request to Seal the File***

■ Defendants also seek to seal the complaint. The guidance of the Second Circuit is that it is only in rare circumstances when a court will seal the record of a proceeding. Even in a criminal proceeding, which arguably attaches a greater stigma to a defendant's reputation than in a civil case, the Second Circuit has stated that "[the power] ... to seal the records of such [criminal] proceedings is one to be very seldom exercised, and even then only with the greatest caution, under urgent circumstances, and for very clear and apparent reasons." *U.S. v. Cojab,* 996 F.2d 1404, 1405 (2d Cir.1993). Such urgent circumstances have been interpreted to allow sealing the record to preserve the government's need for secrecy because of a perceived threat to the defendant's safety. *See id.* at 1408. The Second Circuit also has named endangering of a witness's safety as an example of an appropriate basis for which to seal a record. *See Gannett Co., Inc. v. Burke,* 551 F.2d 916 (2d Cir.1977), *citing United States ex rel. Lloyd v. Vincent,* 520

F.2d 1272, 1274 (2d Cir.1975). There is a "strong presumption of access to court records." *Video Software Dealers Assoc. v. Orion Pictures Corp.,* 21 F.3d 24, 26 (2d Cir. 1994). The Supreme Court has explained that "the decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be left exercised in light of the relevant facts circumstances of the particular case." *Nixon v. Warner Comm., Inc.,* 435 U.S. 589, 599, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).

In the instant case, this Court does not find sufficient reason to seal the record and deny the public access to this proceeding. While the allegations are serious, the record never asserts that they are true, and, moreover, the Court dismisses the case.

**CONCLUSION**

For the reasons stated above, defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and to dismiss each defendant individually are HEREBY GRANTED. Plaintiff's motion for appointment of counsel, defendants' motions to dismiss pursuant to Fed.R.Civ.P. 4(m) and 28 U.S.C. § 1915(e), and defendants' request to strike immaterial and scandalous material in the complaint, to amend the caption, and to seal the file are HEREBY DENIED.

**SO ORDERED.**

*REPORT AND RECOMMENDATION TO THE HONORABLE PETER K. LEISURE*

GRUBIN, United States Magistrate Judge:

Plaintiff *pro se* brings this action against New York University Law School ("the law school") and three of its employees, alleging that defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VIII"), by discriminating against plaintiff on the basis of gender and retaliating against her for complaining about the discrimination. Pending are defendants' motions to dismiss the complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6), for untimely service under Fed.R.Civ.P. 4(m) and for abuse of *in forma pauperis* status

under 28 U.S.C. § 1915(e). They also seek to strike immaterial and scandalous material in the complaint under Fed.R.Civ.P. 12(f). For the reasons set forth below, I respectfully recommend that the complaint be dismissed for failure to state a claim.

## BACKGROUND

Plaintiff's form complaint claims that defendants violated Title VII and the Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621 *et seq.*, by failing to hire her as Executive Director of the law school's Global Law Program and by retaliating against her for complaining to the law school administration about the discriminatory conduct.[1] The factual allegations underlying these claims are set forth in four paragraphs, the first of which alleges that plaintiff applied for the position on September 29, 1994, believing that she was "very well qualified" and not knowing "who would supervise this position or evaluate the applications." Complaint ¶ 8, Attachment A. The remaining three paragraphs are as follows:

On October 13, 1994, I received additional information from NYU about the Global Law Program. I was very distressed to learn that Dean Sexton had appointed Professor Dorsen to supervise the Program. In 1975 when I was in my second year at NYU Law School and a student in Dorsen's class, on two occasions Dorsen had forcibly raped me. Subsequently he had made a number of sexually harassing remarks, including the boast that he always made women who worked for him submit to sex with him.

On October 13, 1994, I called Dean Sexton's Office, and the following day my call was returned by Vice Dean Chase. Chase, whose duties included evaluating applications along with Dorsen, advised me to write a letter withdrawing my application. Before I could act because of emotional distress, NYU sent me a form letter dated October 21, 1994, rejecting my application.

On or about November 2, 1994, I met with Sexton and Chase in the Dean's Office. At the beginning of the meeting,

before I had a chance to present my case, Sexton informed me that he had already spoken to two women, neither of whom knew me, about my allegations. He had also asked Dorsen, who allegedly replied, "Nothing happened." Based on these conversations, Sexton announced that he would take no further action on the matter and rejected my requests for an independent investigation. On information and belief, the Dean failed to follow NYU's own internal policies and regulations on sexual harassment.

*Id.* In a footnote plaintiff further alleges that on February 15, 1995, "one of Sexton's two female informants had lunch with me and told me Dorsen had admitted 'having sex' with me." *Id.*, n. 2.

On May 22, 1995, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), the first page of which is attached to the complaint. Complaint, Attachment B. The allegations contained in the Charge are largely the same as those contained in the complaint. It specifically alleges that plaintiff told Chase about the alleged 1975 rapes during their October 14 conversation and states that a man was ultimately selected for the position. It concludes, "I believe the Director of the Global Law Program did not select me because I complained." *Id.* The EEOC dismissed the charge, finding plaintiff had failed to state a claim under either Title VII or the ADEA, and issued plaintiff a "Right to Sue" letter.

Plaintiff timely filed her complaint herein together with a form Application for Appointment of Counsel stating, in pertinent part:

Although a member of the Bar, my experience is primarily in real estate and immigration. I have NO experience as a litigator and have never tried a case in federal court.

## DISCUSSION

### 1. *Standards under Fed.R.Civ.P. 12(b)(6)*

In determining whether to grant a motion to dismiss for failure to state a claim under

---

1. Plaintiff has withdrawn her age discrimination claim. Memorandum of Law in Opposition to

Motion to Dismiss Complaint ("Plaintiff's Memorandum"), p. 9, n. 5.

Rule 12(b)(6), a court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993) *and* 507 U.S. 972, 113 S.Ct. 1412, 122 L.Ed.2d 784 (1993); *Ad–Hoc Committee of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College,* 835 F.2d 980, 982 (2d Cir.1987). "[C]onsideration is limited to the factual allegations in [the] complaint, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993). A complaint should not be dismissed unless, "after viewing plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Walker v. City of New York,* 974 F.2d at 298 (quotation omitted). *See Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994); *Ad–Hoc Committee of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College,* 835 F.2d at 982. Moreover, *pro se* complaints are to be liberally construed and given even greater latitude than complaints drafted by lawyers. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam) *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam) *Salahuddin v. Coughlin,* 781 F.2d 24, 28 (2d Cir.1986).

## 2. *The Sex Discrimination Claim*

■ In employment discrimination cases, the burden of establishing a *prima facie* case is "not onerous"; indeed, it is "frequently described as 'minimal.'" *Fisher v. Vassar College,* 114 F.3d 1332, 1335 (2d Cir.1997) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Defendants argue that plaintiff has not alleged facts sufficient to establish a *prima facie* failure to hire claim. Defendants' Memorandum, pp. 6–10. Plaintiff argues that defendants have apprehended her theory, asserting "[p]laintiff's complaint clearly sets forth a claim of quid pro quo sexual harassment." Plaintiff's Memorandum, p. 7. After quoting the EEOC Guidelines, 29 C.F.R. § 1604.11(a), which state in pertinent part that "[u]nwelcome sexual advances [and] requests for sexual favors ... constitute sexual harassment when ... submission to such conduct is made either explicitly or implicitly a condition or term of an individual's employment," plaintiff states:

> The gravamen of plaintiff's complaint is that defendant Dorsen had made such "unwelcome sexual advances" or "requests for sexual favors" "explicitly or implicitly a term or condition of [ ] employment." His sexual harassment of plaintiff, commencing with two forcible rapes in 1975, had continued with verbal harassment or solicitations over a period of nearly twenty years. Defendant Dorsen had explicitly told plaintiff that he required women who worked with him to submit to sex and had identified one of her co-workers' as one of his "conquests." Therefore, when plaintiff discovered that Dorsen was supervising the Global Law Program, she had every reason to believe that submitting to sex with him would be "either explicitly or implicitly a term or condition" of her employment.

Plaintiff's Memorandum, pp. 7–8.[2]

■ "Quid pro quo" is one of two theories under which a plaintiff seeking relief for sexual harassment may presently proceed. *Torres v. Pisano,* 116 F.3d 625, 630 (2d Cir. 1997); *Karibian v. Columbia Univ.,* 14 F.3d 773, 777 (2d Cir.), *cert. denied,* 512 U.S. 1213,

---

**2.** Plaintiff's statements in this memorandum of law that Dorsen "had continued with verbal harassment or solicitations over a period of nearly twenty years" and that he had identified a "conquest" are factual allegations that do not appear in her complaint. The complaint states only that after Dorsen raped her in 1975, "[s]ubsequently he had made a number of sexually harassing remarks, including the boast that he always made women who worked for him submit to sex with him." Complaint, Attachment A.

114 S.Ct. 2693, 129 L.Ed.2d 824 (1994); *see Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). To establish a *prima facie* case of quid pro quo sexual harassment, a plaintiff must show (1) that she was subject to unwelcome sexual conduct or an unwelcome sexual advance and (2) that her reaction to that conduct was used as the basis for an employment decision. *Corrigan v. Labrum & Doak*, No. 95 Civ. 6471(PKL), 1997 WL 76524 (S.D.N.Y. Feb.21, 1997); *Karibian v. Columbia Univ.*, 14 F.3d at 777. The employer of a quid pro quo harasser is strictly liable for the employee's conduct because the harasser, by definition, either actually or apparently wields the employer's authority to alter the terms and conditions of employment. *Karibian v. Columbia Univ.*, 14 F.3d at 777; *see also Torres v. Pisano*, 116 F.3d at 633; *Kotcher v. Rosa and Sullivan Appliance Center, Inc.*, 957 F.2d 59, 62 (2d Cir.1992); *Carrero v. New York City Housing Authority*, 890 F.2d 569, 579 (2d Cir.1989).

■ Plaintiff's complaint does not state a *prima facie* claim for quid pro quo sexual harassment. The gravamen of plaintiff's claim is that Dorsen and the other defendants rejected her for the position because she complained, in light of Dorsen's prior conduct, that he was to be the supervisor of the program. The complaint, even liberally construed, cannot be seen as alleging that the adverse employment decision was a result of plaintiff's having refused or otherwise reacted to Dorsen's alleged prior sexual advances or misconduct. She explains that "when [she] discovered that Dorsen was supervising the Global Law Program, she had *every reason to believe* that submitting to sex with him would be 'either explicitly or implicitly a term or condition' of her employment." Plaintiff's Memorandum, p. 8 (emphasis added). This explanation, together with the fact that plaintiff called the law school to voice her complaint immediately upon learning that Dorsen would supervise the position, highlights the defective nature of plaintiff's theory. Plaintiff anticipated, based on her alleged prior dealings with defendant Dorsen, that he would not hire her for the position unless she submitted to sex with him and therefore lodged her complaint before

any adverse action had actually occurred. Plaintiff's theory is premised on the misapprehension that this implicit threat of an adverse decision could give rise to a cause of action for sexual harassment. *See Watts v. New York City Police Dept.*, 724 F.Supp. 99, 104 (S.D.N.Y.1989). Plaintiff furthermore confirms in her exegesis of her complaint that her claim is that Dorsen "did not select me because I complained." Thus, her first claim is simply that which she seeks to advance as a second claim, that her rejection for the position was in retaliation for her having exercised her right to complain about Dorsen's being the supervisor of the program rather than her having objected to some unwelcome sexual conduct.

For the above reasons, plaintiff's first claim should be dismissed.

### 3. The Retaliation Claim

■ Under Section 704(a) of Title VII, as amended, 42 U.S.C. § 2000e–3(a), it is unlawful "for an employer to discriminate against any of its employees or applicants for employment ... because [they have] opposed any practice made an unlawful employment practice by [Title VII]." To establish a *prima facie* case for retaliation, a plaintiff must show (1) she was engaged in a protected activity; (2) the employer was aware of that activity; (3) plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir.1996); *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988); *Castro v. Local 1199, Nat'l Health and Human Services Employees Union*, 964 F.Supp. 719, 729 (S.D.N.Y.1997).

■ A "protected activity" includes the registering of a complaint of a Title VII violation, which "need not take the form of a formal claim filed with a court or administrative agency ... [but] may simply be an objection voiced to the employer." *Iannone v. Frederic R. Harris, Inc.*, 941 F.Supp. 403, 410 (S.D.N.Y.1996); *see Grant v. Hazelett Strip–Casting Corp.*, 880 F.2d 1564, 1569 (2d

Cir.1989). A plaintiff need not establish that the conduct she opposed was in fact a violation of Title VII, but must establish that she had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d at 593. As explained in *Little v. United Technologies*, 103 F.3d 956 (11th Cir. 1997);

> It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

103 F.3d at 960 (emphasis in original) *See also Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d at 1178; *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d at 593; *Gostanian v. Bendel*, No. 96 Civ. 1781(LAP), 1997 WL 214966 at *9 (S.D.N.Y. April 25, 1997).

The determination of whether a good faith, reasonable belief exists is based, in part, on an assessment of the plaintiff's legal sophistication. *Iannone v. Frederic R. Harris, Inc.*, 941 F.Supp. at 410. Accordingly, "an attorney ... will be held to a higher level of expertise about Title VII than a layperson," even if that attorney is not an employment lawyer. *Id.; see Harvey v. Chevron U.S.A., Inc.*, 961 F.Supp. 1017, 1033 (S.D.Tex.1997) (dismissing a retaliation claim by an attorney who conceded she was "not a Title VII lawyer" and never "read or research[ed] this area of the law" on grounds that her claims were based on "nothing more than office gossip and her own speculation" which, the court ruled, were "not the basis upon which a reasonable person, much less

an attorney, would voice a complaint of unlawful employment practices.")

Here, there is no doubt that plaintiff registered a complaint about a perceived Title VII violation by voicing the objection to the Vice Dean of the law school on October 14, 1994.[3] However, no reasonable person, much less an attorney, could have had a *reasonable* belief that she had a valid Title VII claim as of that date. She called the law school immediately after receiving information indicating that defendant Dorsen was in charge of the Global Law Program. She complained of his being the supervisor because of his past alleged sexual misconduct. At that time, neither Dorsen nor anyone else at the law school had acted on her application. Rather, as she, herself, explains, "when plaintiff discovered Dorsen was supervising the Global Law Program, *she had every reason to believe* that submitting to sex with him would be 'made a term of her employment.'" As she thus acknowledges, no unlawful employment practice under Title VII had occurred about which she was complaining. It was only her speculation that one would occur, i.e., that engaging in sex would be made a condition of her employment. *See Watts v. New York City Police Dept.*, 724 F.Supp. at 104. Under these circumstances, plaintiff cannot establish that she was engaging in "protected activity," and I recommend that this claim also be dismissed.

### 4. *Appointment of Counsel*

I did not act previously on plaintiff's request for appointment of counsel because it had to await my review of the case. Upon review, it became clear that appointment was unwarranted, and I have accordingly issued this Report and Recommendation without appointing counsel for her. A court should exercise its discretion to appoint counsel only in cases where plaintiff has made a "threshold showing of some likelihood of merit." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir.1989); *see Hodge v. Police Officers*, 802 F.2d 58, 61–62 (2d Cir.1986). "Even where claims are not frivolous, counsel is

---

**3.** Plaintiff also alleges that she met with defendants Chase and Sexton on November 2, 1994. This meeting, however, occurred after she was rejected for employment and cannot be the basis for her retaliation claim.

often unwarranted where [plaintiff's] chances of success are extremely slim." *Hodge v. Police Officers*, 802 F.2d at 60 (quoting *Maclin v. Freake*, 650 F.2d 885, 887 (7th Cir. 1981)). If the plaintiff's position seems likely to be of substance, the court is also to consider:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Id.*, 802 F.2d at 61–62.

As discussed above, plaintiff's case fails to state a claim, and that failure arises from the factual basis of her purported claims rather than defects in the pleading of them, inability to express herself or inability to investigate the situation. No attorney can change the events that occurred. I note, moreover, that plaintiff is a lawyer admitted to the New York bar with J.D. and LL.M degrees. Although she may not be a litigator or a specialist in employment law, her facility with the legal concepts herein and apparent research into them and her legal abilities are shown in her articulate memorandum opposing defendants' motions.

## CONCLUSION

Given the foregoing determinations, we need not address defendants' additional motions seeking dismissal for untimely service and for abuse of the *in forma pauperis* statute and striking immaterial and scandalous material. I note, simply, based upon my review, that each is without merit. I note additionally, however, that the motions to dismiss each of the individual defendants are meritorious since individuals cannot be held personally liable under Title VII. *See Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir.1995). I express no opinion as to the viability of any state law causes of action plaintiff may wish to pursue in the New York State courts.

For the reasons discussed above, I recommend that the defendants' motions to dismiss this action pursuant to Rule 12(b)(6) be granted.[4]

August 26, 1997.

---

**4.** Upon granting a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), it is "the usual practice" to allow leave to replead. *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991), *cert denied sub nom. Cortec Industries, Inc. v. Westinghouse Credit Corp.*, 503 *U.S.* 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *see also Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir.1990); *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir.1987). "Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion." *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d at 48; *Ronzani v. Sanofi S.A.*, 899 F.2d at 198. Such a justifying reason exists, of course, where any amendment would not serve any purpose, *Kaster v. Modification Sys., Inc.*, 731 F.2d 1014, 1018 (2d Cir. 1984), or would be futile. Because plaintiff's failure to state a Title VII claim arises not from inadvertent omissions from the complaint or a misunderstanding of the law but rather from the lack of any factual basis for such a claim, no amount of repleading could change events as they occurred into other events that might have given rise to a claim. Plaintiff has indicated an intent to add state law claims to this action. If your Honor accepts my recommendation herein that this action be dismissed, any state law claims she seeks to assert may be pursued in state court. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir.1995); *Avello v. Hammons*, 963 F.Supp. 262, 270 (S.D.N.Y.1997) (citing *Castellano v. Board of Trustees of Police Officers' Variable Supplements Fund*, 937 F.2d 752, 758 (2d Cir.), *cert. denied*, 502 U.S. 941, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991)).