UNITED STATES of America, Plaintiff,

v.

**BARRIER INDUSTRIES, INC.,**
Kurt Wasserman, and Mildred
Wasserman, Defendants.

Kurt WASSERMAN, Third–
Party Plaintiff,

v.

DIAMOND CHEMICAL CO., INC., West-
inghouse Remediation Service, Roy F.
Weston, Inc., Security Patrol of Amer-
ica, Inc., Epic Industries, A.L. Diamond,
Scott Garpiel, Henry Levenstein, Cather-
ine Oncher, and Hermandra Moradia,
Third–Party Defendants.

No. 95 Civ. 9114(JSR).

United States District Court,
S.D. New York.

Jan. 27, 1998.

Mary Jo White, Edward Scarvalone, New
York City, for Plaintiff.

Neil D. Grossman, New York City, for Defendants.

## MEMORANDUM ORDER

RAKOFF, District Judge.

In October, 1995, the United States commenced this action under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), seeking (i) recovery of response costs expended by the Environmental Protection Agency ("EPA") in cleaning up a former site of (bankrupt) defendant Barrier Industries, Inc. ("Barrier") operated by Barrier's principal, defendant Kurt Wasserman ("Wasserman"), and (ii) the avoidance as a fraudulent conveyance under the Federal Debt Collection Procedures Act of 1990, 28 U.S.C. § 3001 *et seq.*, of Wasserman's transfer to his former wife, defendant Mildred Wasserman, of a certain New York farm property.[1] In response, Wasserman not only filed various counterclaims against the Government but also instituted a third-party action against other persons and entities.

The case was reassigned to this judge in late February, 1997. Following completion of discovery, the Government and Wasserman brought competing motions for summary judgment, while third-party defendant Epic Industries moved for judgment on the pleadings. On August 15, 1997, the Court telephonically advised counsel that it would grant the Government's motion holding Wasserman legally liable for the clean-up costs and voiding his attempted conveyance of the farm property, would grant Epic Industries' motion to dismiss the third-party claims against it, and would deny Wasserman's summary judgment motions. This Memorandum will serve to confirm those orders and briefly state the reasons therefor.

*With respect to Wasserman's liability for the clean-up,* the following facts are not materially disputed.[2] From 1978 through December, 1993, defendant Barrier used hazardous substances in the manufacture of janitorial chemicals at its facility in Port Jervis, New York. Numerous spills of these hazardous substances occurred in the plant prior to December, 1993. In December, 1993, the Port Jervis Building Department condemned the building, but in early January, 1994, further spills were detected. On January 25, 1994, a representative of the EPA inspected the site and ordered corrective action, which commenced on February 15, 1994, resulting in the clean-up costs here claimed.

Wasserman, who operated the Barrier site, does not contest that the Government has established a prima facie case of his liability under CERCLA, but contends that a genuine issue exists as to whether he was entitled to the "act of God" defense allowed by CERCLA § 9607(b). Specifically, Wasserman argues that spills occurring in January, 1994 were caused by a bursting of pipes occasioned by "an unprecedented cold spell." Def. Memorandum in Opposition at 8. However, nothing documented on the evidentiary record before the Court remotely suggests that this "cold spell" falls within the CERCLA definition of an "act of God," *i.e.,* "an unanticipated natural disaster or other natural phenomenon of an exceptional, inevitable, and irresistible character, the effects of which could not have been prevented or avoided by the exercise of due care or foresight," 42 U.S.C. § 9601(1). Moreover, § 9607(b), by its terms, permits such a defense only if the release or threatened release of hazardous substances was caused "solely" by the act of God. The Government has adduced substantial undisputed evidence that numerous other factors antedating the cold weather of January, 1994 causally con-

---

**1.** The Government's papers identify the farm as being in Westown, New York. Wasserman's papers identify it as being in Minnisink, New York.

**2.** The Government objects to Wasserman's Rule 56.1 Statement of disputed material facts on the grounds, *inter alia,* that it consists of lengthy and conclusory narratives rather than the required short, concise statements of fact in separate numbered paragraphs and that it does not cite to admissible evidence in the record. While these objections are well taken, the Court, in determining which facts are genuinely here in dispute, has nonetheless taken into account the citations to the record contained in Wasserman's memoranda of law.

tributed to the problems at the Barrier site, *see* Pl. Local Rule 56.1 Statement at 15–55. Accordingly, Wasserman's "act of God" defense must be rejected.

■ Wasserman further resists liability by arguing that the EPA's actions did not conform to the national contingency plan required under § 9607(a)(4)(A), *see United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 719–20 (2d Cir.1993), because the EPA's on-site coordinator made an arbitrary "*a priori* decision to remove everything from the site," including non-hazardous materials, Def.'s Memorandum in Support at 22, and because the EPA did not take the measures required for a remedial action pursuant to 40 C.F.R. § 300.430(e)(6) and (9). However, the Government has adduced substantial evidence as to the reasonableness and remedial efficacy of the EPA's determinations in these regards, in response to which Wasserman offers nothing but conclusory argument devoid of any citations to the record or other evidentiary support. *See B.F. Goodrich v. Betkoski*, 99 F.3d 505, 528 (2d Cir.1996).

Accordingly, summary judgment is granted in favor of the Government and against Wasserman on the issue of CERCLA liability.[3] This still leaves the issue of damages, however, as to which the parties have stipulated that damages will be assessed by the Court on the basis of written submissions to be hereinafter supplied by the parties.[4]

*With respect to the alleged fraudulent transfer,* the relevant undisputed facts are as follows. Kurt and Mildred Wasserman married in 1942, physically separated in 1967, and entered into a legal separation agreement in 1985. In the Fall of 1993, the Wassermans began discussions for the distribution of property between them. Lending urgency to these discussions were the mounting financial problems of Barrier, which had filed for bankruptcy protection in June, 1992, and the prospect that actions seeking recovery against Kurt Wasserman's personal assets would be instituted by state and federal authorities, including the Small Business Ad-

ministration, whose substantial loan to Barrier was personally guaranteed by Wasserman.

The Wassermans began divorce proceedings in or around March, 1994. On March 4, 1994, the EPA formally notified Wasserman that it considered Wasserman and Barrier to be potentially responsible for EPA's response costs at the Barrier site. In October, 1994, the EPA further informed Wasserman that it would be filing a lien against Barrier to secure reimbursement of its cleanup costs. On December 6, 1994, a property settlement that included transfer of the farm property here in issue was signed by the Wassermans. It was incorporated into a final judgment of divorce granted on January 25, 1995. As part of this settlement agreement, Kurt Wasserman transferred to Mildred Wasserman his legal title to the farm property, while retaining "the exclusive right to reside on the farm rent free." The agreement also gave Kurt Wasserman the right to collect rent from other tenants of the property in return for his payment of tax, insurance, and other farm-related expenses, and restricted Mildred Wasserman's right to sell or transfer the property. *See* Scarvalone Dec.Exh. WW [Property Settlement Agreement] at ¶ 4.

The Federal Debt Procedures Act of 1990, 28 U.S.C. §§ 3001, *et seq.* ("FDCPA"), renders fraudulent as against a debt to the United States (whether such debt arises before or after the transfer is made) any transfer made in either of two circumstances pertinent here: (1) when the debtor makes the transfer "with actual intent to hinder, delay, or defraud a creditor," § 3304(b)(1)(A), or (2) when the debtor makes the transfer "without receiving a reasonably equivalent value in exchange for the transfer ... if the debtor ... believed or reasonably should have believed that he would incur [ ] debts beyond his ability to pay as they became due," § 3304(b)(1)(B)(ii).

As to the first circumstance, while the Government has more than made out a prima facie case—based in large part on Wasser-

3. Relatedly, Wasserman's counterclaims are dismissed on consent. *See* transcript of oral argument of July 31, 1997 at 27.

4. Wasserman's further pending motion to limit his damages is therefore dismissed without prejudice to being re-raised in connection with these subsequent submissions.

man's own admissions—that Wasserman transferred the farm property with actual intent to hinder the Government's ability to collect on Wasserman's impending debt to the United States, *see, e.g.*, Scarvalone Dec. Exhs. JJ, NN, QQ, SS, UU, VV, Wasserman's opposition papers present no evidentiary rebuttal whatever. Likewise, as to the second circumstance, while the Government has adduced substantial evidence that Wasserman transferred the farm property without receiving equivalent value knowing that he would not be able to pay his impending debt to the Government, *id., see also* Scarvalone Dec.Exh. RR, Wasserman has offered no evidence in opposition.

■ Instead, the defendants argue that the transferee, Mildred Wasserman, is entitled to keep the property because she "took in good faith and for reasonably equivalent value ..." 28 U.S.C. § 3307(a). But here again, while the Government has adduced substantial evidence—based on Mildred Wasserman's own testimony—that Mildred Wasserman neither took the farm property in good faith, *see* citations to Mildred Wasserman Dep., Pl.'s Rule 56.1 Statement ¶¶ 121–25 and 128–29, nor gave reasonably equivalent value, *see* Scarvalone Dec.Exhs. EE and WW at ¶¶ 1–4, Mildred Wasserman has adduced no contrary evidence. Rather, she relies on the legal argument that a property settlement duly incorporated in a state court divorce judgment automatically satisfies the § 3307(a) defense absent a showing that the divorce itself was procured by fraud. This contention, however, has previously been rejected by other courts, *see, e.g., United States ex rel. Hartigan v. Alaska*, 661 F.Supp. 727, 729–30 (N.D.Ill.1987); *see also United States v. Mongelli*, 857 F.Supp. 18, 20–21 (S.D.N.Y.1994), and has attained no greater persuasiveness subsequently. As well stated by the court in *Hartigan:* "the dissolution of marriage 'was certainly never intended to be a vehicle to effect a fraudulent end, or to transmute that which would otherwise be fraudulent into something lawful.'" *Hartigan*, 661 F.Supp. at 730 (citations omitted).

Accordingly, the Government's motion to void the transfer of the farm property is hereby granted.

■ *Finally, with respect to the liability of Epic Industries,* although Wasserman's Amended Third–Party Complaint alleged three different claims for relief against that third-party defendant, Wasserman has now expressly abandoned his claims for indemnification and payment for raw materials, and has limited his claim against Epic to a claim seeking contribution. *See* Def. Memorandum in Opposition at 2 n. 1. Section 9613(f)(1) of CERCLA allows an action for contribution against persons potentially liable under § 9607(a). As applied to the facts alleged by Wasserman, any such liability by Epic would have to be predicated on either former-operator liability, § 9607(a)(2), or arranger liability, § 9607(a)(3). However, Wasserman's one-sentence complaint against Epic for CERCLA contribution, Amended Third–Party Complaint at ¶ 63, fails to allege that Epic was either an operator of the Barrier facility at the time of disposal of hazardous waste or arranged for such disposal. This is in stark contrast to the case on which Wasserman places primary reliance, *United States v. Aceto Agricultural Chemicals Corp.*, 872 F.2d 1373 (8th Cir.1989), in which the Eighth Circuit, in upholding the District Court's refusal to dismiss the Government's CERCLA claims, noted that the Complaint specifically alleged that defendants "arranged for" the disposal of hazardous waste and that several paragraphs of the Complaint recited defendants' specific activities involving generation of hazardous waste through spillage. In the absence of such allegations, Wasserman's CERCLA contribution claim against Epic must be dismissed on the pleadings, albeit without prejudice.

In sum, the Government's motion to hold Wasserman legally liable for the Government's response costs (and its correlative motion to dismiss Wasserman's affirmative defenses and counterclaims), as well as its motion to void the conveyance of the farm property, are granted in their entirety, and Wasserman's corresponding cross-motions are all denied. Epic Industries' motion to dismiss Wasserman's third-party claims

against Epic is granted, the claims for indemnification and payment for raw materials being dismissed with prejudice and the claim for contribution being dismissed without prejudice.

It remains to add that third-party defendants Westinghouse Remediation Services, Inc., Scott Garpiel, Security Patrol of America, Inc., Catherine Oncher, and Hermandra Moradia have previously been dismissed from the case, and that the Court has been informed by counsel for the Government and for Wasserman that all that remains of the case-in-chief is the determination of damages as between them. On September 25, 1997, moreover, the Government and Wasserman filed a stipulation waiving their right to a trial on this issue of damages and agreeing to have this issue decided by the Court on the basis of written submissions. Accordingly, counsel for the Government and Wasserman are directed to jointly call Chambers on February 9, 1998 at 5:00 P.M. to schedule the submission of papers on the damages issue and to advise the Court of the status of any remaining proceedings in this case not otherwise disposed of by this Order or prior proceedings herein.

SO ORDERED.