**Rosalyn QUERRY, Plaintiff,**

**v.**

**Francis J. MESSAR, individually, Emil Cavorti, individually, Donald Christopher, individually, Oracle Management Services, Inc. and the City of Yonkers, N.Y., Defendants.**

**No. 98 CIV. 0019(WCC).**

United States District Court,
S.D. New York.

July 27, 1998.

Lovett & Gould, for Plaintiff, White Plains, NY, Lee Ann Crossley, of counsel.

William M. Mooney, Corporation Counsel of the City of Yonkers, for Defendants Francis J. Messar, Emil Cavorti, Donald Christopher and the City of Yonkers, N.Y., Yonkers, NY, Elisabeth A. Palladino, Deputy Corporation Counsel, of counsel.

Ahmuty, Demers & McManus, for Defendant Oracle Management Services, Inc., Albertson, NY, Janice Berkowitz, Christopher P. Cartier, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Rosalyn Querry brings this action against the City of Yonkers, New York, Yonkers Police Commissioner Donald Christopher, Captain Francis Messar, Lieutenant Emil Cavorti, (collectively, the "City defendants"), and Oracle Management Services, Inc. ("Oracle"), alleging discrimination based on gender and disability and tortious interference with contract in violation of the Equal Protection Clause of the Fourteenth Amendment, Title VII of the Civil Rights Act of 1964 ("Title VII"), § 2000e, *et seq.*, the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.*, the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985 ("§ 1983" and "§ 1985," respectively) and New York law. The City defendants move

for summary judgment on all claims pursuant to Fed.R.Civ.P. 56. Defendant Oracle moves to dismiss the Complaint with prejudice, as against it, pursuant to Rule 12(b)(6). For the following reasons, the City defendants' motion is granted in part and denied in part, and defendant Oracle's motion is granted to the extent that plaintiff's claims are dismissed without prejudice.

## Background

Rosalyn Querry is a police officer with the Yonkers Police Department (the "Department"). From May 1987 through January 1996, she worked full-time in the Second Precinct, in the forensics lab from May 1988 to January 1995, and on patrol from January 1995 through January 1996. During this time, Querry had received numerous awards and commendations, and had achieved a near-perfect attendance record, having never missed work on account of illness or disability.

On January 31, 1996, Querry slipped and fell on the ice while working. As a result, she suffered a debilitating back injury and was absent from work between February 2, 1996 and March 29, 1996.

What happened thereafter is less clear. It appears that on or around March 30, 1996, defendant Oracle, an alleged third-party provider of medical services and an administrator of claims for the City, ordered Querry back to work. Apparently, Querry returned to work that same day, but remained on duty for only four hours, due to intense back pain. Querry was absent from work on April 2, 3, 21 and 22, and from May 6 to May 27 on account of her injuries. She was diagnosed as having "chronic low back syndrome" and a degenerative disc.

On May 28, 1996, Querry was again ordered back to work.[1] Querry worked until June 28, 1996, when she once again began suffering from "excruciating back and leg pain." Querry was then absent from work until July 2, 1996, at which time she was again ordered back. Querry then worked from July 4 until August 5, 1996, at which time she took a scheduled vacation, which was to be completed by September 2. Howev-

---

1. However, the Complaint does not state which defendants ordered her return.

er, she did not return to work until September 24, due to continued back and leg pain.

Around this time, defendants Christopher and Oracle asked plaintiff to be examined by Michael Bardwell, a chiropractor. Bardwell determined that Querry would not be fit to return to work for at least four weeks and scheduled a follow-up visit for later that month. Querry alleges that because defendants Messar, Cavorti, and Oracle were "[u]nwilling to accept this recommendation," and wished to "forc[e Querry's] premature return to duty," they "ordered [her] to be immediately re-examined by the same chiropractor," who, upon being "pressured, bullied and intimidated" by defendants, "altered his opinion and determined that [Querry] could forthwith return to work." [2] Querry returned to work, while continuing to suffer from back pain. Defendants terminated her disability benefits on or about September 25, 1996. Querry alleges that her injuries were exacerbated on account of the City's refusal to pay for further treatment, and that she began to suffer from panic attacks, heart palpitations, anxiety, "persistent sinus tachycardia," and "hyperkinetic heart."

On January 15, 1997, Querry's treating physician, Dr. Robert Werboff, advised defendants that she could not operate a police vehicle on account of her injuries. According to Querry, defendants Cavorti and Messar "deliberately [and] falsely advised" her that her physician had forbidden her to operate her own car as well, "to upset" her, "exacerbate her psychological disability and set her up for potential disciplinary charges in the event that she used her personal vehicle" to get to work.

On or about January 21, 1997, Michael Sussman, an attorney who was then representing Querry, called defendants to discuss "Oracle's withholding of approval for treatments of [Querry's] back; the repeated harassment [she] received by reason of her disabilities, the issuance of orders to force her to return to work when that was medically contra-indicated; [and] the City's deliber-

ate exacerbation of [Querry's] stress and heart [condition]."

Querry filed a charge with the New York district office of the Equal Employment Opportunity Commission ("EEOC") on July 9, 1997, claiming discrimination based on gender and disability in violation of Title VII and the ADA. The charge stated that she had "systematically been refused [reasonable] accommodation" for her disabilities, "targeted for retaliatory micro-managerial nit-picking," "deliberately ordered to perform work assignments with a (now successful) view towards exacerbating [her] physical and related emotional disabilities," and "threatened with disciplinary action ... for seeking to comply with [her] treating physician's instructions." Querry also alleged that "certain male supervisors" had "referred to [her] as a bitch."

In her complaint, Querry does not allege that she was threatened with disciplinary action; however, she does allege that Messar, "with the concurrence of Oracle, Cavorti and Christopher," retaliated against her in Spring of 1997 by refusing "to permit [her] to resume her police duties," and "forc[ing] her to utilize/waste otherwise accumulated sick time—since her own physician had [falsely] certified that she was not then disabled." Querry also claims that "she was punitively assigned ... to midnight tours of duty," when she had consistently worked days since 1988. Querry also alleges that Messar has called her a "bitch" and that Christopher has denied her special duty assignments "while deliberately according those assignments to male officers." Finally, Querry alleges that in or around September 1997, defendants caused Querry's physician once more to alter his medical opinion and direct Querry back to work, when she was still disabled.

Defendants deny that they discriminated against Querry or conspired to pressure her doctors into altering their opinions. Defendants point out that Querry has continued to miss work to date. According to the City defendants, Querry reported to work only 19

---

**2.** Additionally, by way of affidavit, Querry states that Drs. Poon, Gauhan, Gross and Edelstein were also intimidated by defendants into determining that she was fit for work. *See* Querry Aff. ¶¶ 34, 54–56; Querry Ex. 7. However, because these allegations are not contained in her complaint, we cannot consider them.

days during 1997 and as of April 7, the date of their motion, had worked only twelve days in 1998. Moreover, the City defendants suggest that they have reasonably accommodated Querry by offering her "light duty assignments," such as the position of "Desk Officer" in the Second Precinct, and a job in the Communications Division, which required her "to take low priority police reports over the telephone." Defendants also claim to have transferred Querry from the forensics lab to patrol because of a "patrol manpower shortage." Additionally, defendant Oracle offers various legal defenses for dismissing the Complaint with respect to it, including that it is not a state actor, and that Querry has failed to allege "joint action" on its part with the City, and the existence of a valid contract between plaintiff and her medical providers.

## DISCUSSION

The City defendants and Oracle have moved to dismiss the Complaint pursuant to Rules 56 and 12(b)(6) respectively. Because these defendants rely on different grounds, the Court will consider their arguments separately below.

### I. *Claims Against the City Defendants*

#### A. *Summary Judgment Standard*

The City defendants move for summary judgment pursuant to Fed.R.Civ.P. 56.[3] Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(d). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all evidence must be viewed and all inferences drawn in the light most favorable to the non-movant. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 2075, 141 L.Ed.2d 151 (1998). The court must be particularly cautious about awarding summary judgment to a defendant employer where intent is at issue, *Gallo v. Prudential Residential Services, Ltd.*, 22 F.3d 1219, 1224 (2d Cir.1994), or where the non-moving party has been afforded no discovery, *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir.1995).

### B. *Discrimination Based on Disability*

Querry claims that her employer, defendant City of Yonkers, discriminated against her based on her disability. The ADA prohibits covered employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to . . . advancement, . . . compensation, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual" under the ADA is "an individual with a disability, who with or without reasonable accommodation, can perform the essential functions of the employment position" at issue. *See id.*, § 12111(8).

■■ Thus, in order to state a prima facie case under the Act, a plaintiff must show (1) that the employer is subject to the ADA; (2) she is disabled: (3) she is otherwise qualified to perform the essential functions of the job with or without reasonable

---

**3.** The City defendants also move for summary judgment under Local Rule 56.1, arguing that plaintiff "fails to controvert, most, if not all, of the statements presented by [the] City defendants in their Rule 56.1[s]tatement," and therefore does not raise a genuine issue of material fact for trial. Accordingly, the City defendants ask the court to deem admitted all of the facts that plaintiff does not specifically deny in her Rule 56.1 statement. While we admonish plaintiff for failing to provide a "short and concise statement" of disputed facts in accordance with Rule 56.1(a), we decline to deem these facts admitted because plaintiff implicitly denies them by presenting her own facts in the statement, and because we have reviewed the record and determined that there are a number of material facts in dispute. *Accord United States v. Barrier Indus. Inc.*, 991 F.Supp. 678, 679 n. 1 (S.D.N.Y.1998); *Pedre Co., Inc. v. Robins*, 984 F.Supp. 235, 236 (S.D.N.Y.1997); *Mehtani v. Paul Revere Life Ins. Co.*, No. 94 Civ. 2880, 1995 WL 617229, at *2 (S.D.N.Y. Oct.20, 1995).

accommodation, and (4) she has suffered an adverse employment decision because of her disability. *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869–70 (2d Cir.1998); *Stone v. City of Mt. Vernon,* 118 F.3d 92, 96 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998). The plaintiff bears the initial burden of showing that she can perform the essential functions of the job with or without reasonable accommodation. *D'Amico,* 132 F.3d at 151.[4] This burden is not a heavy one. *Gilbert,* 949 F.2d at 642. "It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Borkowski v. Valley Cent. Sch. Dist.,* 63 F.3d 131, 138 (2d Cir.1995). "Reasonable accommodation" may include adjustments to work schedules or other job restructuring. *See* 45 C.F.R. § 84.12(b). However, "'reasonable accommodation' does not mean elimination of any of the job's essential functions." *Gilbert,* 949 F.2d at 642.

The parties do not dispute that for at least part of the time in question, Querry was disabled within the meaning of the ADA and that the City is an employer subject to the ADA.[5] Rather, they contest whether Querry is a "qualified individual" under the Act. According to defendants, Querry was not "otherwise qualified" for the position of police officer because she could not perform one of the essential functions of her job—regularly attending work. While it is not entirely clear from her papers, Querry seems to argue that she did not regularly appear for work because defendants did not provide her with reasonable accommodations, which exacerbated her condition, and made it impossible for her to work on a regular basis.[6]

The problem with Querry's position is that she has not suggested a plausible accommodation for her disability. Without question, her complaint does not suggest such an accommodation, which is grounds in itself for dismissing her claim. *See Lincoln Cercpac v. Health and Hospitals Corp.,* 147 F.3d 165, 167 (2d Cir.1998); *D'Amico,* 132 F.3d at 152. Nor does Querry suggest such accommodation elsewhere in her papers. While her brief in opposition to defendants' motions suggests that a four-hour shift would accommodate her, Querry has not shown that she would be "otherwise qualified" for the job with such accommodation, a flaw which is fatal to her complaint.

It is undisputed that upon her return to work on March 30, 1996, Querry "was only able to work four hours due to intense back pain," after which time, she remained absent "by reason of her continuing disabilities" until May 27, 1996, when she was again "ordered back to work." Because Querry admits that she suffered "continuing" disability after working only four hours, as a matter of law, Querry cannot show that she would be "otherwise qualified" to perform her job, even when accommodated by four-hour shifts. *See, e.g., Hypes v. First Commerce Corp.,* 134 F.3d 721, 726 (5th Cir.1998) (dismissing ADA claim on motion for summary judgment where employee could not arrive to work "on time or often enough to perform essential functions of job," even with flextime); *Rochford v. Town of Cheshire,* 979 F.Supp. 116, 122 (D.Conn.1997) (same, where plaintiff adduced no evidence suggesting that he could perform essential functions of job after eight-week leave); *Kennedy v. Applause, Inc.,* No. 94 Civ. 5344, 1994 WL 740765, at *5–6 (C.D.Ca. Dec.6, 1994) (same, where plaintiff's own admission of "persistent joint and muscle pain" belied the claim that a

---

**4.** Once the plaintiff has shown that she is otherwise able to perform the essential functions of the job with reasonable accommodation, the burden shifts to the employer to show that the accommodation is not possible or effective. *See Gilbert v. Frank,* 949 F.2d 637, 642 (2d Cir.1991).

**5.** The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities"; "a record of such an impairment"; or "being regarded as having such an impairment." 42 U.S.C.

§ 12102(2)(a–c). Because defendants regarded Querry as being disabled, she was disabled within the meaning of the Act. *See id.; Johnson v. New York Med. College,* No. 95 Civ. 8413, 1997 WL 580708, at *8 (S.D.N.Y. Sept.18, 1997).

**6.** Querry also maintains that defendants' failure to provide her with reasonable accommodation was a means for discriminating against her on account of her disability and gender. *See infra* parts II, III.

four-hour shift was a reasonable accommodation), *aff'd,* 90 F.3d 1477 (9th Cir.1996); *Walders v. Garrett,* 765 F.Supp. 303, 314 (E.D.Va.1991) (dismissing complaint where proposed accommodation offered "no real prospect that plaintiff would be able to achieve reasonably regular and predictable attendance"), *aff'd,* 956 F.2d 1163, 1992 WL 38168 (4th Cir.1992).

Querry has not shown that she is "otherwise qualified" to perform her job, because the last time she worked four hours, the amount of time she now proposes to work, she was unable to work thereafter for almost two months. Querry's request must be denied because in substance, she "asks for an accommodation which defeats her ability to perform a function of her job, namely attendance." *Rhoads v. FDIC,* 956 F.Supp. 1239, 1249 (D.Md.1997). The accommodation is therefore inherently unreasonable, and need not be considered by her employer. *See Gilbert,* 949 F.2d at 642 ("An accommodation that eliminates an essential function of the job is not reasonable.") (internal quotation omitted); *Santiago v. Temple Univ.,* 739 F.Supp. 974, 979 (E.D.Pa.1990) (where plaintiff could not demonstrate ability to attend work with any degree of predictability, his handicap could not be accommodated), *aff'd,* 928 F.2d 396 (3d Cir.1991); *see also Davis v. Bowes,* No. 95 Civ. 4765, 1997 WL 655935, at *16 (S.D.N.Y. Oct.20, 1997) ("It is axiomatic that an employee who cannot show up for work cannot perform an 'essential function' of her job."); *Kotlowski v. Eastman Kodak Co.,* 922 F.Supp. 790, 798 (W.D.N.Y.1996) ("The ADA does not require an employer to accommodate an employee who cannot get to work."); *Burrell v. Bentsen,* No. 91 Civ. 2654, 1993 WL 535076, at *17 (S.D.N.Y. Dec.21, 1993) ("Rehabilitation Act does not protect absenteeism or employees who take excessive leave"; plaintiff was no longer qualified once she stopped reporting to work) (internal quotations omitted), *aff'd,* 50 F.3d 3 (2d Cir.1995).

■■■ Even if Querry could show that a four-hour shift would accommodate her disability, the City defendants would not be required to provide her with such accommodation to comply with the ADA. An employer need only offer a "reasonable accommodation"; it need not provide the employee with the accommodation of her choice. *Fink v. New York City Dep't of Personnel,* 855 F.Supp. 68, 72 (S.D.N.Y.1994), *aff'd,* 53 F.3d 565 (2d Cir.1995). By offering Querry "light duty" assignments, the City satisfied its obligations under the Act. *See Hardy v. Village of Piermont,* 923 F.Supp. 604, 610 (S.D.N.Y. 1996); *see also Karbusicky v. City of Park Ridge,* 950 F.Supp. 878, 884 (N.D.Ill.1997) (city not liable after reassigning police officer who could no longer carry gun to community service office where officer received same pay and benefits). *Cf. Hardy,* 923 F.Supp. at 610 (plaintiff not entitled to light duty assignment where police department had no such position available); *Bey v. Bolger,* 540 F.Supp. 910, 927 (E.D.Pa.1982) (government "is not required under law to offer 'light duty status' positions to every person who applies"). Because we hold as a matter of law that Querry is not "otherwise qualified" to perform the job of police officer, we grant summary judgment to the City defendants on Claims 1 and 3, with respect to plaintiff's ADA and equal protection claims based on disability.

## C. *Discrimination Based on Gender*

Querry also brings a gender discrimination claim against the City defendants under Title VII and the Equal Protection Clause of the Fourteenth Amendment, pursuant to § 1983. She alleges that the City defendants "deliberately targeted, for punitive and selective persecution, female police officers who have suffered on-the-job injuries," by

> willfully subject[ing] said female targets for retaliatory action with the objective of (i) depriving them of proper medical treatment and/or disability related benefits including but not limited to compensation, (ii) exacerbating their physical and/or psychological injuries to penalize them for being disabled and, (iii) deliberately intimidating and/or threatening their private treating physicians ... into ordering their patients back to work prematurely, and *inter alia* deliberately forcing them to work while disabled ... with a view to-

wards coercing their involuntary resignation and/or retirement.

She claims that in accordance with this policy, defendants (1) forced her to work while she was disabled; (2) intimidated her treating physicians into falsifying their medical reports; (3) wrongfully denied her disability leave and benefits; (4) denied her "special duty assignments"; and (5) assigned her to the midnight shift in Spring of 1997, after she had worked days since 1988.

In reply, defendants make three arguments; first, that Querry has failed to allege a hostile work environment under Title VII; second, that she does not state facts sufficient to support her equal protection claim; and third, that her claim with respect to the special duty assignments is barred by the statute of limitations. We address each these arguments in turn, with respect to each one of Querry's allegations, beginning with Querry's claim that defendants violated her equal protection rights.

### 1. *Equal Protection*

■ Querry brings her equal protection claim under § 1983. To impose § 1983 liability against a municipal defendant, a plaintiff must show that the alleged violation resulted from an official policy, custom or practice. *Monell v. Department of Soc. Serv. of City of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). She must also produce "some evidence that policymakers were aware of a pattern of [unconstitutional conduct] but failed to [respond]." *Walker v. City of New York*, 974 F.2d 293, 300 (2d Cir.1992).[7]

■ A claim for the violation of one's equal protection rights is cognizable under § 1983. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). Under the Equal Protection Clause, state actors must treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To state a claim for denial of equal protection, a plaintiff "must allege purposeful

and systematic discrimination by specifying instances in which [she] was singled out for unlawful oppression in contrast to others similarly situated." *Contractors Against Unfair Taxation Instituted on New Yorkers v. City of New York*, No. 93 Civ. 4718, 1994 WL 455553, at *6 (S.D.N.Y. Aug.19, 1994) (quoting *Albert v. Carovano*, 851 F.2d 561, 573 (2d Cir.1988)) (internal quotation marks omitted); *see also DeLoreto v. Ment*, 944 F.Supp. 1023, 1033 (D.Conn.1996) (plaintiff must allege "specific conduct that violated [her] rights to equal protection, the time and place of the conduct, and the identity of the official who engaged in the conduct"). "To establish such intentional or purposeful discrimination, it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir.1994). A plaintiff need not show that a discriminatory reason was the sole reason for the disparate treatment, just that it was a substantial or motivating one. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265–66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

■ Here, Querry alleges that female police officers who were injured on the job were singled out for specific forms of purposeful discrimination. Implicit in this allegation is that female officers who had been injured on the job were treated differently from male officers, and female officers who were not so injured, and that defendants intended to base such treatment on the officer's status as injured and/or female. Moreover, Querry alleges numerous occasions in which she was retaliated against due to her gender and claimed disability: that her disability benefits were terminated, that defendants had directed her treating physicians to alter their medical opinions, so that plaintiff could be ordered back to work, and that she was assigned to a midnight shift for discriminatory reasons. While the Complaint is not a model of clarity, plaintiff has provided sufficient facts to put defendants on notice of her claims. *See* Fed.R.Civ.P. 8(a). Because

---

**7.** Defendants do not contest that plaintiff has alleged a policy, custom or practice under § 1983.

plaintiff has had no discovery, and therefore, no opportunity to request the names of similarly situated individuals, her allegations are sufficient.[8] *Accord Tester v. City of New York*, No. 95 Civ. 7972, 1997 WL 81662, *6 (S.D.N.Y. Feb.25, 1997) (declining to dismiss equal protection claim prior to discovery although plaintiff had "yet to fully articulate a specific policy of the police department which treats homosexuals differently ... based upon their sexual orientation").

■ Defendants also challenge one of plaintiff's specific allegations , under the Equal Protection Clause, their claimed failure to return Querry to her special duty assignment in the forensics laboratory. Defendants assert that Querry cannot state an equal protection claim with respect to this incident because both male and female officers were removed from special duty assignments during the "patrol manpower shortage." This argument misapprehends plaintiff's claim. Querry does not allege that she was treated differently from male officers when she was removed from the assignment but when she was not returned to it. Moreover, she submits evidence that of the eight officers who were removed from their posts due to the shortage of patrol manpower, the only three that were returned were men, and three of the five who were not returned were women. Of the remaining two, one was a man who was not returned because "he did not want to go back," and the other, because the position

was "taken over" by the state. See Pl.'s Ex. 1, "Temporary Transfers." Because there exists evidence in the record suggesting that the officers were either returned, or not returned, on the basis of gender, we decline to dismiss plaintiff's equal protection claim with respect to special duty assignments.

Additionally, Cavorti and Messar move individually for summary judgment on plaintiff's equal protection claim, arguing that she "fail[s] to allege that either defendant engaged in conduct which treated [her] differently from other similarly situated males." As previously discussed, Querry's allegations are sufficient to state a claim for disparate treatment under the Equal Protection Clause pursuant to § 1983. To the extent that Cavorti and Messar move for summary judgment on this ground, their motion is denied, because as defendants admit, they are specifically named in paragraphs 23, 27 and 32a of the Complaint, in addition to paragraphs 6, 7, 16, 24 (Cavorti) and 28 (Messar), and generally named "defendants" throughout the Complaint. *Cf. Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir.1987) (dismissing § 1983 claim against individual officers where complaint was "entirely devoid of any allegations of their personal involvement"). To the extent that defendants would have desired a more definite statement of the Complaint, their relief was by way of Fed. R.Civ.P. 12(e) (permitting motion for more

---

8. We are also mindful that plaintiff has specifically requested time for discovery by attorney affidavit pursuant to Rule 56(f). Among other things, plaintiff "intends to depose all Defendants .... serve interrogatories and document production requests ... [to] explore ... Defendants' policy regarding on-the-job injuries; Defendants' treatment of male officers who suffered such injuries; Defendants' treatment of female officers; Defendants' knowledge of Plaintiff's relationship with her treating physicians; and the actual motivation for Defendants' allegedly retaliatory acts." Crossley Aff. at ¶ 7. To the extent that plaintiff has requested additional time for discovery with respect to the equal protection claim against the City defendants, her request is granted. *See Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 474 (2d Cir.1995) (vacating summary judgment award and reversing court's denial to compel additional discovery where plaintiff had requested discovery of individuals similarly injured

by defendant); *Meloff*, 51 F.3d at 374–75 (reversing award of summary judgment where "no discovery deadlines [had been] set, [plaintiff] ... needed depositions .... to explore the motivations and reasons for [the adverse employment decision,] ... the ... method in which [it] was done ... [and] company policy"); *Villante v. Department of Corrections of City of New York*, 786 F.2d 516, 521, 523 (2d Cir.1986) (court's failure to order deposition discovery of officials in § 1983 action was abuse of discretion; "claim could only succeed upon a showing of actual or constructive knowledge ... of supervisory personnel and ... facts solely in the defendants' control"). Moreover, the attorney affidavit meets the requirements of Rule 56(f). *See Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 422 (2d Cir.1989); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir.1985).

definite statement prior to the filing of responsive pleadings).

### 2. *Title VII*

 Querry also brings a claim for gender discrimination under Title VII. Title VII provides, "it shall be ... unlawful ... for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to ... compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a). One way of stating a Title VII claim is to show that one gender has been treated differently than the other in the workplace. To make out a claim for disparate treatment under Title VII, a plaintiff must first show that (1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) the adverse employment action occurred in circumstances giving rise to an inference of discrimination. *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464 (2d Cir.1989); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The "burden of establishing a prima facie case of disparate treatment [under Title VII] is not onerous." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994) ("[t]o survive summary judgment, [the burden] at the prima facie stage is de minimis").

 As a woman, Querry is a member of a protected class under Title VII.[9] She also has submitted evidence that she suffered adverse employment actions, namely, being forced to work while she was injured, denied disability leave and benefits, and assigned to midnight shifts, when she had worked days since 1988. *See, e.g., Harris v. American Protective Servs. of N.Y.*, 1 F.Supp.2d 191, 196 (W.D.N.Y. 1998); *Fruchter v. Sossei*, No. 94 Civ. 8586, 1996 WL 640896, at *7 (S.D.N.Y. Nov.4, 1996); *Doolittle v. Ruffo*, No. 88 Civ. 1175, 1996 WL 528475, at *2 (N.D.N.Y. Sept.9, 1996). Finally, Querry has presented evidence to give rise to an inference of discrimination, despite the fact that she has not been afforded discovery. First, it is undisputed that Querry has received awards and commendations for her work, and has otherwise successfully performed her job in the forensics lab prior to her injury, but was nevertheless removed and not returned to this position. Second, Querry submits evidence that while neither she nor any other qualified woman was returned to her position, each of the qualified men who was transferred from his position and who desired to return ultimately did so. At this stage in the proceedings, we cannot say that such evidence is insignificant.[10]

 Once the plaintiff has established a prima facie case of disparate treatment, the burden of going forward shifts to the defendant to advance a legitimate, non-discriminatory reason for the adverse employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Any such reason will suffice; the employer " 'need not persuade the court that it was actually motivated by the proffered reasons' in order to nullify the presumption and obligate the plaintiff to satisfy the burden of proof." *Fisher v. Vassar College*, 114 F.3d 1332, 1335–36 (2d Cir.1997) (quoting *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089), *cert. denied*, —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). If the employer satisfies

---

**9.** As previously established Querry is not "otherwise qualified" for her job as police officer, and therefore is not a member of a "disabled" class of police officers protected by the ADA. Furthermore, "injured on the job" is not a protected class. *See Hazeldine v. Beverage Media Ltd.*, 954 F.Supp. 697, 703 (S.D.N.Y.1997) ("physical impairment, standing alone, is not necessarily a disability under the ADA"). Thus, for the purposes of determining whether Querry has stated a prima facie case of disparate treatment under the civil rights laws, we consider only her allegations of gender discrimination.

**10.** The Court may consider a claim that is barred by the statute of limitations, as discussed below, as proof of discriminatory intent. *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 556, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) (time-barred acts "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue"); *accord Newman v. Montefiore Med. Ctr.*, No. 96 Civ. 2687, 1996 WL 741599, at *3 (S.D.N.Y. Dec.27, 1996) (considering incident time-barred under 42 U.S.C. § 2000e–5(e) as evidence of employer's "discriminatory intent in its later actions").

this burden, the plaintiff may prevail only if she shows by a preponderance of the evidence that the employer's proffered reason is pretextual, "either because the pretext finding itself points to discrimination or because other evidence in the record points in that direction—or both." *Fisher*, 114 F.3d at 1339.

■ Here, the City defendants claim that they made the above employment decisions in order to alleviate a "patrol manpower shortage," and because plaintiff, who had no degree in forensic science, was unqualified to work in the lab. According to defendants, plaintiff was fit for duty and they preferred to assign injured officers to non-patrol status, so as "to place more able bodied officers on patrol."

While this is a plausible, non-discriminatory reason for removing Querry from her non-patrol, forensics lab position, it does little, if anything, to explain the adverse employment actions that were taken against her during 1996–97, well after the claimed manpower shortage.[11]

We therefore conclude that Querry has presented sufficient evidence of pretext at this stage in the proceedings to withstand defendants' motion for summary judgment, except as to her "special duty assignment" claim, which, as discussed hereinafter, is barred by the statute of limitations.[12]

### a. Orders to Return to Work

The City's proffered reason for ordering Querry back to work—the manpower shortage—is questionable in light of her injuries and lengthy absences from work during 1996–98. However, even if we considered this reason to be genuine, Querry has submitted sufficient evidence of pretext for us to decline to dismiss her claim at this stage in the proceedings. As previously noted, Querry states that she was removed from a position for which she was qualified, and in which she received awards for her work, and not

returned to it, while all eligible males who were removed and desired to be returned were ultimately returned, *see* Querry Ex. 1. Whether Querry was unqualified for this job, as suggested by defendants, is a question of fact for the jury, in light of Querry's previous praiseworthy performance. Moreover, the evidence shows that at least one medical doctor's opinion was changed within one week, *see* Querry Ex. 4–5. This sudden change, together with the other circumstances discussed, suggests that the City defendants may have applied pressure on the doctor. Querry must be afforded discovery to explore defendants' motivation for directing plaintiff's multiple medical examinations within a short time period. Given the procedural posture of the case, this claim cannot be dismissed. *See Meloff*, 51 F.3d at 374–75; *Villante*, 786 F.2d at 521, 523.

### b. Termination of Disability Leave and Benefits

For the same reasons, defendants' termination of her disability leave and benefits gives rise to an inference of pretext. Accordingly, defendants' motion is denied with respect to this claim.

### c. Assignment to Midnight Shift

Querry alleges that she was assigned to the midnight shift, after having worked days for the preceding nine years which, at the time, accounted for 90% of her employment with the Department. Considered in light of the other adverse employment actions taken against Querry during 1996–97, there is sufficient evidence of pretext to deny defendants' motion to dismiss with respect to this claim as well.

### d. Special Duty Assignments

As previously stated, Querry has alleged that defendant Christopher "deliberately denied her special duty assignments while deliberately according those assignments to male officers." From these allegations, however, it is impossible to discern to which "special duty assignments" she refers. Even

---

11. Defendants' proffered explanation could be deemed legitimate with respect to assigning Querry on patrol to the midnight shift after her injury, except that the "manpower shortage" occurred in 1995. *See* Christopher Reply Aff. at ¶¶ 4–5.

12. Interestingly enough, defendants do not state that they ordered Querry back to work, terminated her benefits, or put her on sick leave because they no longer considered her disabled. If proffered, this would be a legitimate reason for defendants' adverse employment actions.

viewing the record in the light most favorable to plaintiff, the only "special duty assignments" we can discern are the positions of detective and forensic lab assistant. She applied for the former position in April 1994. She held that latter position until January 13, 1995, at which time she was removed "due to an alleged shortage of officers of the street."

Because Querry did not file her EEOC charge until July 9, 1997, more than two years after these incidents occurred, they are time-barred, and accordingly, we cannot consider them. *See* 42 U.S.C. § 2000e–5(e) (providing 300 day limitations period for charge filed with state or local EEOC office; 180 day period for charge filed with EEOC) (citing 42 U.S.C. § 2000e–5(e)); *Butts v. City of New York Dep't of Housing Preservation and Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993) (court has jurisdiction only over claims stated in EEOC charge or based on conduct that occurred after charge was filed and that is "reasonably related" to claims stated in charge).

### e. *Bitch Comment*

██ Defendants also argue that plaintiff's allegation that she was called a "bitch" in the workplace does not state a claim under Title VII. We agree. *See, e.g., Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) ("mere utterance of a[n] . . . epithet [does] not . . . violate Title VII") (internal citations omitted); *Coleman v. Prudential Relocation,* 975 F.Supp. 234, 243 (W.D.N.Y.1997) (dismissing claim where plaintiff solely alleged she was called a "black bitch" and a "nigger"); *Flynn v. Goldman Sachs & Co.,* 836 F.Supp. 152, 162–63 (S.D.N.Y.1993) (same, where complaint alleged that plaintiff was called a "treacherous bitch"). But, by making this argument, defendants seem to miss the point of Querry's complaint. Querry does not allege gender discrimination in the workplace solely on account of this one remark. Rather, she maintains that the above-articulated policy, as evidenced by each of the adverse employment actions taken against her by defendants created a hostile work environment for injured female police officers, such as she. To the extent that "[a]ctionable sexual harassment must consist of more than isolated incidents or casual comments that express harassment or hostility," Querry has stated a claim. The incidents of which she complains occurred repeatedly, over a period of two and one-half years. *Cf. Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 63 (2d Cir.1992) ("the incidents must be repeated and continuous"). This is sufficient, not only with respect to Title VII, but under § 1983. *See Annis v. County of Westchester,* 36 F.3d 251, 254 (2d Cir.1994) ("harassment that transcends coarse, hostile and boorish behavior can rise to the level of a constitutional tort" under § 1983).

### D. *Retaliation*

Finally, Querry alleges that the City defendants retaliated against her for complaining about discrimination. For the following reasons, we hold that Querry has failed to state a claim for retaliation under either Title VII or the ADA.

██ To state a claim for discriminatory retaliation, a plaintiff must show "(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Gallagher v. Delaney,* 139 F.3d 338, 349 (2d Cir.1998) (Title VII); *Muller v. Costello,* No. 94 Civ. 842, 1996 WL 191977, at *6 (N.D.N.Y. April 16, 1996) (ADA). A causal connection may be established either indirectly by showing that the protected activity was followed closely by adverse treatment, or through other evidence, such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against the plaintiff by the defendant. *Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir.1991); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir.1995) ("timing [of adverse action may] support[ ] inference of discrimination sufficient to establish prima facie case"). "The plaintiff's burden at this stage is slight; [she] may establish a prima facie case with de minimis evidence." *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 465 (2d Cir.1997). To be considered a "protected activity" under the civil rights laws, a complaint alleging dis-

crimination "'need not take the form of a formal claim filed by an administrative agency ... [it] may simply be an objection voiced to the employer,'" *Barcher v. New York Univ. School of Law*, 993 F.Supp. 177, 184 (S.D.N.Y.1998) (quoting *Iannone v. Frederic R. Harris, Inc.*, 941 F.Supp. 403, 410 (S.D.N.Y.1996)); *see also Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990), with or without the assistance of an attorney, *Sprott v. Franco*, No. 94 Civ. 3818, 1997 WL 79813, *13 (S.D.N.Y. Feb.25, 1997) (where plaintiff retained attorney "to notify defendants that she intended to file a lawsuit in federal court if they did not agree to settle her existing retaliation claim," plaintiff engaged in protected activity). The plaintiff need not establish that the conduct she opposed was in fact discriminatory; she need only show a "good faith, reasonable belief that the ... challenged actions of the employer violated the law." *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988). "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances," *Galdieri–Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir.1998), including whether she was represented by counsel when the complaint was made, *see Barcher*, 993 F.Supp. at 185 (determination of "good faith, reasonable belief ... is based, in part, on an assessment of plaintiff's legal sophistication"; law professor held to standard of reasonable attorney); *Iannone*, 941 F.Supp. at 410 ("an attorney ... will be held to a higher standard of expertise ... than a layperson"); *Volberg v. Pataki*, 917 F.Supp. 909, 914 (N.D.N.Y.) ("good faith belief" standard is applicable to a "typical lay employee," but not to an attorney), *aff'd*, 112 F.3d 507, 1996 WL 601405 (2d Cir.1996), *cert. denied*, ── U.S. ──, 117 S.Ct. 1252, 137 L.Ed.2d 333 (1997).

■ To satisfy the second requirement, the plaintiff need only establish that the employer knew or should have known about her complaint, *Cosgrove v. Sears, Roebuck and Co.*, 9 F.3d 1033, 1039 (2d Cir.1993), and that the complaint reasonably described an activity that violated the civil rights laws, *see Castro v. New York City Bd. of Educ. Per-*

*sonnel*, No. 96 Civ. 6314, 1998 WL 108004, at *8 (S.D.N.Y. March 12, 1998).

■ Here, Querry alleges that civil rights attorney Michael Sussman called defendants on or about January 21, 1997 to discuss "Oracle's withholding of approval for treatments of [Querry's] back; the repeated harassment [she] received by reason of her disabilities, the issuance of orders to force her to return to work when that was medically contra-indicated; [and] the City's deliberate exacerbation of [Querry's] stress and heart [condition]." While this conversation may be considered a complaint, it is inadequate to arise to a "protected activity" under Title VII or the ADA. First, Querry does not state whom Mr. Sussman called. It is therefore impossible to ascertain whether the City "knew or should have known" about the conversation. *See Spurlock v. NYNEX*, 949 F.Supp. 1022, 1032 (W.D.N.Y.1996) (allegations must "provide defendant with enough information whereby it can verify the existence of such a complaint"). Second, it cannot be ascertained from the allegations whether Mr. Sussman clearly articulated a violation of the civil rights laws. The allegations leave doubt as to how the City could have known that Sussman was alleging a violation of Title VII or the ADA. *Cf. Brands–Kousaros v. Banco Di Napoli S.P.A.*, No. 97 Civ. 1673, 1997 WL 790748, at *5 (S.D.N.Y. Dec. 23, 1997) ("the protected activity must involve some sort of complaint about a type of discrimination that [the civil rights laws] forbid[ ]").

Because Querry has failed to show that this conversation constituted a "protected activity" under the civil rights laws, she has not established a prima facie case of retaliation under Title VII or the ADA. Accordingly, this claim is dismissed.

## II. *Claims Against Defendant Oracle*

Next, Querry alleges that defendant Oracle discriminated against her based on her gender and disability in violation of the Equal Protection Clause of the Fourteenth Amendment and tortiously interfered with her relationship with her treating physicians in violation of New York law. Oracle has moved to dismiss the Complaint on the grounds that,

as a private corporation, it cannot violate the Fourteenth Amendment and that Querry has not pled the existence of a contract, therefore barring her tortious interference claim.

### A. *Motion to Dismiss Standard*

Dismissal under Rule 12(b)(6) is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Accordingly, on a motion to dismiss, the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, the Court may disregard "conclusions of law or unwarranted deductions of fact." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994).

When a complaint is dismissed under Rule 12(b)(6), "the usual practice" is to allow leave to amend. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). "Although leave to [amend] is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion." *Id.* Such a reason exists if a plaintiff "is unable to allege any facts sufficient to support [her] claim," *id.*, or where "amendment[ ] would not serve any purpose," *Kaster v. Modification Systems, Inc.*, 731 F.2d 1014, 1018 (2d Cir.1984). If a plaintiff has "at least colorable grounds for relief, justice does ... require leave to amend." *Id.* (internal quotation omitted).

### B. *Equal Protection Claim*

In order to state a claim under the Equal Protection Clause against defendant Oracle, Querry must show that Oracle "acted under color of law" to violate her constitutional rights. *See* 42 U.S.C. § 1983; *Fries v. Barnes*, 618 F.2d 988, 990 (2d Cir.1980). Ora-

cle contends that Querry's equal protection claim must fail with respect to it because she "does not contest that Oracle is a private entity, unconnected with the state; nor ... provide any basis to conclude that Oracle 'acted under color of law.' " Oracle Reply at 2. Upon a review of the Complaint, we conclude that Oracle is incorrect. Nevertheless, we dismiss Querry's equal protection claim, because it is vague and conclusory.

The Court infers that in her complaint, Querry attempts to allege a conspiracy among Oracle and the City defendants to pressure her treating physicians into falsifying their medical opinions, and to use these opinions to force her back to work and terminate her disability benefits while she remained disabled. "It is ... axiomatic that a state [actor] may not induce, encourage or promote private persons to accomplish what is constitutionally forbidden to accomplish." *Norwood v. Harrison*, 413 U.S. 455, 465, 93 S.Ct. 2804, 37 L.Ed.2d 723 (1973). "There is ample authority to the effect that '[j]oint interference of state agents and private parties with private rights constitutes state action attributable to ... [the] private sector participants.' " *Kia P. v. McIntyre*, 2 F.Supp.2d 281, 288 (E.D.N.Y.1998) (quoting *Suss v. American Soc. for Prevention of Cruelty to Animals*, 823 F.Supp. 181, 186 (S.D.N.Y.1993)) (alteration in original); *see also Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) ("to act under color of state law for § 1983 purposes does not require that the defendant be an officer of the State .... [i]t is enough that he is a willful participant in joint action with the State or its agents") (internal quotations marks omitted).[13]

However, "in order to survive a motion to dismiss [a § 1983 claim alleging a conspiracy], the complaint must contain more than mere conclusory allegations." *Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir.1993). It "must allege facts demonstrat-

---

13. We note, while not deciding—because it has not been briefed by the parties—that Oracle may be a state actor under the Fourteenth Amendment because it administers the City officers' disability benefits. *See Catanzano v. Dowling*, 60 F.3d 113, 119–120 (2d Cir.1995) (finding state action where otherwise private entities "assumed the responsibility for [the State's] mandated health care duties" in providing home health care services under Medicaid pursuant to state regulation) (alteration in original) (internal quotation omitted).

ing that the private entity acted in concert with the state to commit an unconstitutional act." *Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir.1992). This means that the plaintiff "should make an effort to provide some 'details of time and place and the alleged effect of the conspiracy.'" *Id.* (quoting 2A MOORE'S FEDERAL PRACTICE ¶ 8.17[6], at 8–109 to 8–110 (2d ed.1992)).

Here, Querry claims that in conspiring to force her physicians to change their medical opinions, defendants violated her equal protection rights by "target[ing], for punitive and selective persecution, female police officers who have suffered on-the-job injuries." Such allegation is conclusory and cannot withstand a motion to dismiss, because Querry does not specify who, on behalf of Oracle, took part in the conspiracy, where the conspiracy occurred, nor what was done in furtherance of the conspiracy nor when, where or how it was done. Querry's allegations are therefore insufficient to state a claim against Oracle, a private entity, under the Equal Protection Clause. *Accord Humpherys v. Nager,* 962 F.Supp. 347, 352 (E.D.N.Y.1997) (dismissing claim under § 1983 where complaint did "not offer a scintilla of fact that explains when, where, or how the parties reached the alleged agreement"). Accordingly, this claim is dismissed without prejudice and with leave to amend the complaint within 20 days, if the missing allegations can be supplied in compliance with Fed.R.Civ.P. 11.[14]

### C. *Tortious Interference with Contractual Relations*

Querry also brings a claim for tortious interference with contractual relations against defendant Oracle. To state a claim for tortious interference with a contractual relationship, a plaintiff must allege (1) the existence of a valid contract between the plaintiff and a third party; (2) the defen-

dant's knowledge of the contract; (3) the defendant's intentional procurement of its breach; and (4) damages. *Riddell Sports Inc. v. Brooks,* 872 F.Supp. 73, 77 (S.D.N.Y. 1995). Here, Querry does not allege the existence of a contract between herself and any of her treating physicians. Therefore, her claim for tortious interference with contract cannot stand. *Lutnik v. New York City Health and Hosps. Corp.,* No. 89 Civ. 4217, 1991 WL 66941, at *3 (S.D.N.Y. April 23, 1991) ("Without pleading the existence of a contract, a claim for intentional interference with contractual relations cannot survive" a motion to dismiss); *accord Pani v. Empire Blue Cross Blue Shield,* No. 93 Civ. 8215, 1996 WL 734889, at *2 (S.D.N.Y. Dec.23, 1996) (dismissing claim where plaintiff alleged that "relationship ... between himself and his patients ... ha[d] been adversely affected" because plaintiff did not plead existence of specific contract or defendant's knowledge of contract). Accordingly, this claim is dismissed without prejudice and with leave to amend the complaint within 20 days.

### Conclusion

For the foregoing reasons, the Court grants the City defendants' motion for summary judgment on plaintiff's ADA and § 1983 claim, with respect to her claimed disability, on plaintiff's Title VII claim with respect to the "special duty assignments," and on plaintiff's retaliation claim; grants defendant Oracle's motion, to the extent that the Complaint, as against it, is dismissed without prejudice and with leave to amend the Complaint within 20 days of this Opinion and Order; grants the City defendants leave to renew their motion for summary judgment upon the completion of discovery.

SO ORDERED.

---

14. To the extent that Querry brings a claim against defendants under 42 U.S.C. § 1985, this claim is also dismissed. Section 1985 prohibits two or more persons from conspiring to violate the civil rights of another on the basis of race or other class-based distinction. *See* 42 U.S.C. § 1985(3); *Gagliardi,* 18 F.3d at 194. For the reasons articulated above, Querry has failed to

state facts sufficient to support a claim against any of the defendants under § 1985(3). *See Frooks v. Town of Cortlandt,* 997 F.Supp. 438, 456 (S.D.N.Y.1998) (dismissing § 1985 claim because municipality, "a single entity," cannot conspire with its own employees); *Huntemann v. City of Yonkers,* No. 95 Civ. 1276, 1997 WL 527880, at *14 (S.D.N.Y. Aug.25, 1997) (same).